CHRISTIE–MYERS FEED CO. v. CLEVELAND GRAIN & MILLING CO.

(Circuit Court of Appeals, Fourth Circuit. June 15, 1925.)

No. 2324.

1. Brokers ☞103—Principal could ratify sale, though report not received in time specified.

Where grain broker was required by principal to report transactions by telegram by 10:30 a. m., and he did not telegraph report of a sale until 10:03, which reached principal at 10:58, principal could ratify sale.

2. Appeal and error ☞1002—Jury's findings on conflicting evidence not reviewable on appeal.

Findings of jury on conflicting evidence cannot be questioned on appeal.

3. Brokers ☞106—Correspondence of broker with seller admissible in action on contract for sale of grain made through broker.

In action for damage from refusal of buyer to accept grain purchased through broker, correspondence between broker and seller held admissible to show scope of broker's authority in making contract, ratification of his acts, and that broker had communicated to seller the defendant's request for delay in delivery; fact that such request had been made to broker for communication to seller having been testified to by officers of broker.

4. Appeal and error ☞719(1)—Court not required to consider contentions, in absence of assignment of error.

In action for refusal to accept grain purchased through contract with broker, circumstances held not to require consideration of contention that agreements were Ohio contracts and void thereunder, where no ruling below was assigned as error.

5. Exceptions, bill of ☞13—Rule prohibiting recital in bill of exceptions of immaterial evidence enforced.

Rule No. 10, requiring that only so much of evidence shall be embraced in bill of exceptions as is necessary to clearly present questions involved in rulings excepted to, and that such evidence be condensed and in narrative form, will be enforced, and in cases of breach thereof, court may discipline counsel to whose negligence breach may be ascribed.

In Error to the District Court of the United States for the Northern District of West Virginia, at Clarksburg; William E. Baker, Judge.

Action by the Cleveland Grain & Milling Company against the Christie-Myers Feed Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles C. Scott and E. G. Smith, both of Clarksburg, W. Va. (A. F. McCue, of Clarksburg, W. Va., on the brief), for plaintiff in error.

George M. Hoffheimer, of Clarksburg, W. Va. (E. Bryan Templeman, of Clarksburg, W. Va., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. The Christie-Myers Feed Company, plaintiff in error, is a corporation of West Virginia. It was defendant below. The defendant in error is the Cleveland Grain & Milling Company, an Ohio corporation. In the court of first instance it was the plaintiff. The parties will be here designated by the positions they occupied there.

The plaintiff's story, as told in the upwards of 15,000 words of its declaration and bill of particulars, was in substance that by three separate contracts, made on July 30, September 2, and September 8, 1920, respectively, it had sold the defendant 30,000 bushels of oats at the aggregate price of $23,210, that in consequence of the defendant's refusal to take and pay for them it had been forced to resell them, and had, including the expense to which it had been put, sustained a loss by so doing of $8,740.62, with interest thereon from February 10, 1921. On the 24th of April, 1924, the jury rendered a verdict in its favor for $7,723, and the defendant sued out this writ of error. The latter says that it never entered into any binding contract to buy the oats, and, even if it did, the plaintiff released it from any obligation to do so by failing to deliver them at the time specified in the agreements.

Whatever contracts were made were negotiated through a broker acting for the plaintiff. The defendant admits that it received written notice from the broker that the contracts in question had been made, and that it did not at the time, nor until many weeks

had passed, inform either the broker or the plaintiff that it did not consider them as binding upon it. It says, however, that the broker, in assuming to make these sales, exceeded the power which the plaintiff had given him; and, second, according to the custom of the trade, the contracts did not become binding upon the buyer until it received from the seller notice of the latter's confirmation of what the broker had done.

[1, 2] Little need be said as to the first contention. The first and third contracts were made in literal execution of the powers expressly conferred by the plaintiff upon the broker. The same would have been true of the second, had the broker's telegram informing the plaintiff that it had been entered into reached Cleveland by 10:30 a. m. It was actually sent by the broker from Clarksburg at 10:03, but was not received by the plaintiff until 10:58. The plaintiff booked the order, and ever thereafter treated it as a contract binding upon it and the defendant. There is no evidence that the latter knew anything about plaintiff's requirements that the broker's telegrams should reach it by 10:30. Obviously, the plaintiff might, if it chose, ratify a sale, the report of which reached it 28 minutes later than the hour it had previously prescribed. The evidence that it did so, and never for a moment dreamed of doing otherwise, is abundant and is uncontradicted. There was much oral as well as written testimony submitted by the plaintiff as to the previous authority of the broker and its subsequent ratification of all the broker had done in its name. As already stated, it was almost, if not altogether, uncontradicted. Nevertheless the question of the broker's authority and of the plaintiff's ratification was submitted to the jury, and their findings on those issues in favor of the plaintiff cannot be here questioned.

Defendant offered some testimony that by the custom of the trade it had the right to expect that the plaintiff would send it a personal confirmation of the broker's action, and that, as none came, it was justified in assuming that the plaintiff was not willing to make the sales. There was much evidence to the contrary, not the least persuasive of which, if believed, was as to conduct of the defendant inconsistent with the possibility that it supposed the contracts had not been entered into. This question was also submitted to the jury, and their verdict answers it.

[3] The plaintiff admitted that the oats were not delivered at the time specified in the contracts, but it said deliveries were postponed at the request of the defendant. On this issue the testimony was in direct conflict. The jury accepted the version given by the witnesses for the plaintiff. The defendant complains of the admission of much correspondence between the plaintiff and its broker. It was admissible to prove the scope of the broker's authority, the ratification of what the broker had assumed to do on behalf of his principal, and to show that the broker had communicated to the plaintiff the defendant's request for delay in deliveries; the fact that such request had been made by the defendant to the broker for communication to the plaintiff having been testified to by the officers and employees of the broker, to whom they were said to have been made.

[4] In defendant's oral and printed arguments in this court, it says that the agreements were Ohio contracts, and that under the Ohio law they were void for the lack of signed memoranda of the terms there required, but which admittedly are not necessary if the contract was subject to West Virginia law. It does not appear that this contention was ever brought to the notice of the trial court, or was consciously passed upon; nor is any ruling of the court below as to it assigned as error. The circumstances of this case are not such as to call for the exercise of our exceptional right to consider errors not assigned. We have given attention to the defendant's various objections to the admission or rejection of evidence, and, without discussing them in detail, it is sufficient to say that, if there was any error in such matters, which we do not intimate, it is not of sufficient importance to justify a reversal of the judgment below. The instructions of the court fully and accurately submitted the issues to the jury, and we find no error in them, or in the court's refusal to give others.

The plaintiff says that the bill of exceptions was not signed in time, and denies that it is a part of the record upon which we are justified in taking action. We find it unnecessary to pass on this contention. Whether it is properly before us or not, the result must be the same.

[5] Here the opinion might well end, and would, were it not for the fact that, in the preparation of the bill of exceptions in this case, no attention whatever has been paid to the second paragraph of our rule No. 10, which reads "that only so much of the evidence shall be embraced in the bill of exceptions as may be necessary to present clearly the questions of law involved in the rulings to which exceptions are reserved, and such evidence as is embraced therein shall be set forth in condensed and narrative form, save

when a proper understanding of the questions may require parts of it being set forth otherwise." No attempt to comply with this rule has been made. The evidence has not been reduced to narrative form. At an utterly unnecessary expense to the parties, everything has been printed in it, including full transcripts of the articles of incorporation of the plaintiff and of the defendant, colloquies with counsel, bills of lading, with all the conditions thereon, although no question arises under any of the terms of such bills, and much other equally useless matter.

In our view, the observance of this rule saves much uncalled-for expense, and, what is even more important, promotes justice by bringing sharply before us the questions upon which we are to pass. We intend to enforce it. In cases of its breach, we will always be reluctant and usually unwilling to deny the parties the review to which they would otherwise be entitled. To do so would be to punish them for the neglect of their counsel; nor would it be necessary for us to take such action, as the counsel who are really responsible are officers of this court, and are subject to its disciplinary powers, which, in view of this plain intimation, we assume it is improbable we will ever be called upon to use.

Affirmed.