W. E. Stogdon, *Administrator, etc. v.* Charleston Transit Company, *a Corporation*

(No. 9580)

Submitted September 20, 1944. Decided December 5, 1944.

*Spilman, Thomas & Battle, H. R. Klostermeyer* and *J. Howard Hundley*, for plaintiff in error.

*J. Blackburn Watts, L. F. Poffenbarger* and *Martin C. Bowles*, for defendant in error.

Kenna, Judge:

This action was brought in the Circuit Court of Kanawha County by W. E. Stogdon, administrator of the

estate of Albert Lee Stogdon, against the Charleston
Transit Company for the purpose of recovering for death
by wrongful act on the part of the defendant. On motion
of the plaintiff the trial court set aside a verdict for the
defendant and awarded the plaintiff a new trial, for the
reason, as shown by his written opinion, made a part of
the record, that instruction fourteen, given on behalf of
the defendant over the plaintiff's objection, submitted to
the jury the question of whether plaintiff's decedent, at
the time of the collision resulting in his death, was en-
gaged in a joint enterprise with the driver and other occu-
pants of the car in which he was riding, so that any negli-
gence of which the driver was guilty at the time could be
imputed to him and thus bar recovery, the court being of
the opinion, after studying a full transcript of the testi-
mony, that the evidence would not sustain a finding to the
effect that plaintiff's decedent was a participant in a joint
enterprise at the time of the fatal injury. Plaintiff in
error, defendant below, took the position that the giving
of defendant below's instruction number fourteen con-
cerning contributory negligence was not prejudicial, even
though erroneous, because of the failure of the testimony
of plaintiff below to establish negligence of any sort on
the part of the defendant. The transit company took the
further position that if the proof does justify submitting
the case to a jury and admitting that there is no contro-
versy concerning the material facts relevant to the ques-
tion of joint enterprise, that question was properly sub-
mitted to the jury because divergent inferences necessary
to a correct conclusion could be drawn by reasonable
minds from the facts proven. In this state of the record
it is necessary that we outline the surrounding circum-
stances, particularly the relationship of the occupants of
the Stogdon car at the time of the collision, as disclosed
by the record before us.

William E. Stogdon, the father of the decedent and of
four of the other five occupants of the car at the time of
the accident, lives in Sissonville, a town fourteen miles
north of Charleston on U. S. Route 21, locally known as

the "Sissonville Road", where he operates a service station. He owned, for family use, a five-passenger Chevrolet automobile, which was most frequently used by the persons who occupied the car at the time of the collision. These were his daughter, Mildred Stogdon, age twenty-six; his sons, William E. Stogdon, Jr., age twenty-one; Albert Lee Stogdon, age seventeen; Homer Stogdon, age fifteen and Robert Stogdon, age thirteen, usually accompanied by Ray Elswick, Jr., a neighbor, age fifteen. It was their custom to use the car in a drive to Charleston on Saturday night, it not being necessary for them, or any of them, to obtain permission, they "just used it any time they got ready to go", although W. E. Stogdon, Jr. was the only one of them who could drive. On the Saturday night in question they left their home at about seven o'clock, Junior driving, Mildred sitting next to him on the front seat and Albert at the far right. Ray Elswick, Jr. was on the back seat on the left, Robert Stogdon in the middle, and Homer Stogdon on the right. The object of the trip was to permit the three younger children on the back seat to go to a moving picture at the West Theatre located on Washington Street West, being the street on which Route 21 goes through the City of Charleston east and west, and to permit Albert to buy a coat and Mildred to make some purchases. Albert and Mildred were not driven to their ultimate destination, which was the principal business district of Charleston, but left the car, along with Junior, where it was parked on Walnut Street, going by bus to do their shopping. Before leaving the car it was understood by them all that Junior would get the car and pick up the three younger children at eleven o'clock in front of Goff's Drug Store on Washington Street near the West Theatre, and would then go to the Custer Theatre to meet Albert and Mildred, where it was understood they would then be. This they did, occupying the same positions in the car that they had coming into Charleston. It seems that Junior had no definite purpose in coming to Charleston on that particular evening other than to loaf. This he did by going to two beer parlors, meeting a num-

ber of friends from Sissonville and drinking some beer. He and his friends then went in the car to a bowling alley on Kanawha Boulevard, near Patrick Street, where he stayed until he started home. The testimony concerning the amount of beer that he drank is conflicting.

The declaration is in two counts, the first being based upon the violation of an ordinance of the City of Charleston and the second upon negligence coupled with the violation of a statute. The alleged ordinance was not introduced.

The collision took place just east of the intersection of "B" Street with West Washington Street, the bus of the defendant having stopped in the middle of the street just west of "B" Street to permit passengers to alight and having started east and gone between fifty and sixty feet before the impact. At the moment of the collision it could not have been going faster than fifteen miles an hour, and due to the fact that the driver had applied his brakes either simultaneously with or just preceding the collision, some witnesses thought that the bus was standing still. The Stogdon car, which at that time was proceeding west at a speed variously estimated and calculated to have been between twenty-five and sixty miles an hour, struck the left front of the bus with its left side so violently that its frame and bumper back to its left front wheel were forced under the left front corner of the bus so quickly that its driver was unseated. All of the occupants of the Stogdon car were injured, Mildred and Albert both being killed.

The front of the bus had been knocked off its course so that its forward end was facing diagonally to its left and toward the north or hill side of West Washington Street from beyond its left side of the street "center". The Stogdon car had been turned towards its left, so that it faced diagonally in the opposite direction with the bus and its rear had been forced against the north or hill side of West Washington Street where there is no sidewalk.

There is a great deal of detailed evidence in this record resting upon the question of negligence which we believe

to be immaterial upon review and which we think unnecessary to recite.

Code, 17-8-4, reads as follows: "An operator meeting another vehicle coming from the opposite direction on the same highway shall turn to the right of the center of the highway so as to pass without interference." At the end of the plaintiff's proof, the defendant moved that the plaintiff be required to elect whether he sought recovery under the statute or under the ordinance. This the circuit court declined to require because, in its opinion, the provisions being identical, the same set of facts that would give rise to the right of recovery upon one would create the same right under the other, and consequently, the plaintiff had the right to submit both to the jury. The ordinance not having been proved, it was not error to decline to require an election because there could have been no recovery under the unproved ordinance.

We will first consider the matter of primary negligence on the part of the defendant. There seems to be no controversy concerning the fact that at the time of the collision the bus had just let out passengers on the west side of "B" Street, where it stopped in the "center" of Washington Street in a position where its left front and rear wheels were both north of the middle line of that street. At the time of the collision it had proceeded east not more than sixty feet and had not changed its direction, with the consequence that it was in the middle of the street when the bus and car collided. Upon its left or north there was an open and unobstructed space in the street estimated to have been twelve feet, with room for the Stogdon car to have safely passed. Defendant contends that that being so it was contributory negligence for the driver of the Stogdon car not to take advantage of what it contends was a plain opportunity of safety. Defendant assigns as a reason for the bus being in the middle of the street the fact that parking was permitted on the bus's right side, and when there were vehicles parked on that side of the street those going east were forced to travel in the middle of the street. According to defendant's contention, that

practice gave rise to the custom of vehicles going east on Washington Street traveling in a lane outside the space allotted to parked vehicles at all times. To this the plaintiff replies by saying that the proof shows that there were no vehicles parked on the right of the bus within more than a hundred feet and that there are no exceptions named in the statute upon which it relies. Impossibility of compliance with a regulatory statute excuses performance; customary non-compliance cannot.

Under these circumstances we do not feel that we can say, as a matter of law, that the evidence of the plaintiff entirely failed to show a breach of legal duty incumbent upon the defendant which resulted in the death of plaintiff's decedent.

This brings us to the point of whether the question of joint enterprise has been properly submitted to the jury.

Under our West Virginia cases the common right to control a vehicle being used by the persons concerned to achieve a mutual purpose, definite in its scope, is deemed to be a joint enterprise. Here, of course, the mutual purpose was to drive from their home at Sissonville to the City of Charleston and return. Beyond that, their purposes and destinations varied. Three wanted to go immediately to a moving picture, two to shop and one to simply loaf. The three were taken to their destination in the car evidently because it was located on Washington Street and on their route to a parking place. Two had to reach the store in which they wished to buy by other means of transportation from the parking place, and the driver, after parking the car, later used the automobile to fulfil his purpose. We do not believe that here simply traveling together from one town to another is sufficient unity of purpose to constitute a joint enterprise. Neither do we believe that the proof in this case establishes sufficient common control of the vehicle to make the negligence of one imputable to the other. It is not shown that any one of these young people on this trip, or on any other trip that they took together, suggested to Junior either the route that he should follow or his definite destination. It

does not appear that at any time any number of the others attempted to direct him in any way. All but Mildred were considerably younger. In fact, Robert, whose age was thirteen, and Homer, whose age was fifteen, could hardly be expected to exercise joint control upon equal terms with their sister, twenty-six, and their brother, twenty-one. See *Howe* v. *Central Vermont Railway*, 91 Vt. 485, 101 Atl. 45, 48, for a brief discussion on the question of infancy as it affects joint enterprise. We think our West Virginia case of *Horchler* v. *Van Zandt*, 120 W. Va. 452, 199 S. E. 65, contains a clear discussion of a joint enterprise under our West Virginia holdings and cites applicable authorities. We do not think it necessary to repeat that discussion here, except to say that the case referred to fails to distinguish between a "joint adventure" and a "joint enterprise", the first being for profit and the second not necessarily so, according to its recent treatment. We have been unable to find in this record evidence of the control, either physical or authoritative, of the Stogdon car on one of the Saturday night trips exercised by any person or persons other than Junior. True, he apparently was very anxious to please his brothers and sister, but there is nothing, either direct or circumstantial, to show that his conduct was subject to their control, either individually or as a whole. Under these conditions, inferential conclusions are barred. We believe that a special verdict stating that his conduct was so controlled, from this record would have to be set aside, and that being so, it follows it was error to submit to the jury the question of whether the occupants of the Stogdon car were engaged in a joint enterprise when the collision took place. We do not think that it needs a citation of authorities to sustain the statement that an instruction given to a jury without sufficient proof to sustain a finding based thereon constitutes reversible error where prejudicial, and here it certainly prejudices the plaintiff's case by making available to the defendant a defense not justified by the evidence.

There is, we believe, a fatal defect in the phraseology of instruction number fourteen that is not briefed. Fol-

lowing the usual premise, that instruction contains the following language, emphasis supplied: "* * * that all were *equally engaged in a joint enterprise,* that each acted voluntarily, and that all acted in unison, and that they were doing a thing necessary or convenient for their mutual enjoyment, and that none of them had exclusive control of the automobile, but that they all had at least equal right to control the actual operation of the car, even though the actual operation of the car was entrusted by them to W. E. Stogdon, Jr., then the Court instructs the jury that Albert Lee Stogdon, deceased, *was engaged in a joint enterprise * * *"*. It will be observed that the subject, or phrase, to be defined is included among the constituent elements in the definition. According to the instruction, in order for a person to be engaged in a joint enterprise he must not only be so engaged, but must also act voluntarily, in unison with others, and have equal right of control, et cetera. To our minds this is plainly what is known as a circle in definition and as such is bound to be confusing. This question is not raised and we comment for the purpose only of preventing the form of the instruction in question from receiving our implied approval.

The question whether Albert Stogdon, as a guest passenger, was guilty of contributory negligence due to the fact that he failed to remonstrate with Junior concerning his apparent negligent driving we believe to be obviously a jury question, and since this record does not plainly show that the jury's verdict for the defendant was based upon a finding of fact to that effect it cannot be sustained for that reason.

The final question briefed but not raised in the Circuit Court by the plaintiff in error is that W. E. Stogdon, the father of Albert and of Junior, is barred from recovery due to the fact that he is one of the distributees and that to permit him to recover would be to permit him to profit by his own wrong, because Junior, the driver, was acting as his agent under the family-purpose doctrine to which this Court is definitely committed. It is undoubtedly true

that in those cases where a judgment for the plaintiff would, of necessity, be based upon the wrongful act of the distributee, through his agent or otherwise, there can be no recovery to the extent of that distributee's interest in the judgment. The same result would logically follow in this case if a possible recovery were unavoidably based upon Junior's negligence, which the verdict necessarily found. However, we do not believe that that verdict can be set aside because it was based upon an erroneous instruction concerning joint enterprise and can yet be left to stand for the purpose of establishing Junior's other contributory negligence. Neither do we believe that this record establishes Junior's contributory negligence as a matter of law. That being so, and there being no basis upon which we can now say that Junior's contributory negligence has been established, and being of the opinion that the order of the Circuit Court of Kanawha County setting aside the verdict of the jury and awarding the plaintiff a new trial is justified by the record before us, that order is affirmed.

*Affirmed.*

Fox, JUDGE, dissenting:

In this case there was a jury trial and a verdict for the defendant. The trial court set aside the verdict on the sole ground that it had erred in giving instruction No. 14, requested by the defendant. This instruction submitted to the jury the question whether the driver of the automobile involved and plaintiff's decedent were engaged in a joint enterprise at the time of the accident, so that the contributory or concurrent negligence on the part of the driver, if any, could be imputed to the decedent. The trial court on its reconsideration of the question, at the time of passing upon the motion to set aside the verdict, was of the opinion that, while the instruction would have been proper in a case where there was a dispute as to the facts bearing upon the question of joint enterprise, there being no such dispute here, the question was one of law for the court, and that there was prejudicial error in the

giving of this instruction. This is the principal question presented to this Court, although should we be of the opinion that in no event could the jury have been warranted in finding for the plaintiff, or the court in rendering judgment in his favor, the giving of the said instruction, even if error, was not prejudicial, we would, on that theory, be warranted in reinstating the verdict and remanding the case for the entry of judgment thereon. It is apparent that if plaintiff's decedent and the driver of the automobile were engaged in a joint enterprise, and the driver was either guilty of contributory or concurrent negligence, barring recovery on his part, as the jury must necessarily have found, then his negligence is imputed to plaintiff's decedent and there can be no recovery by the plaintiff. The first question presented, therefore, is whether these two individuals were engaged in a joint enterprise at the time of the accident.

The facts bearing upon the question of a joint enterprise are rather fully stated in the majority opinion, and it is not deemed necessary to deal with them here. I am unable to see any conflict as to facts on this point. This being true, I am inclined to agree with the trial court that the question of fact should not have been submitted to the jury. In my opinion, it was one of law for the trial court, and, had it been asked to do so, I think it should have given an instruction to the effect that the parties mentioned were engaged in a joint enterprise, and the negligence of one imputable to the other. I base this opinion on the view that the correct principle, as applied to the use of an automobile, under the family purpose doctrine, as that doctrine is established in this State, necessarily makes members of a family parties to a joint enterprise, so far as their activities are connected with the use of the automobile.

The law as to a joint enterprise, as the same applies to personal injuries sustained in vehicular accidents, largely grows out of the familiar rule which permits one occupying the relation of guest-passenger to recover damages from a host driver, or the owner of the automobile oper-

ated, and from a third person negligently operating another vehicle, in cases where the contributory or concurrent negligence of the host operator would bar recovery by him. In such case it is generally held that, in the absence of some failure of duty or precaution on the part of the guest, the negligence of the host is not imputed to the guest, and he may recover both from his host owner or the operator, and the negligent third person. Here the doctrine of joint enterprise steps in, and if the two persons who would, in usual circumstances, be considered as host and guest, are, in fact, engaged in a joint and common enterprise, then the negligence of one is imputable to the other; and if the negligence of one bars recovery by him from a third person, it also bars the other. The doctrine only arises where a third party is involved. As between the parties to a joint enterprise, one may recover against the other for his negligence. 5 Am. Jur. 788, 38 Am. Jur. 925.

A clear and concise statement of the fundamental rule governing a joint enterprise, as applied to the operation of an automobile, will be found in 5 Am. Jur. 786, Sections 500 and 501, quotations from which follow:

> "If two or more persons unite in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect of the control of the means or agencies employed to execute such common purpose, the negligence of one in the management thereof will be imputed to the others. Accordingly, if an occupant of an automobile is engaged in a joint enterprise with the driver and is injured by reason of the concurrent negligence of the driver and a third person, the driver's contributory negligence will be imputed to such occupant and will bar recovery by him against the third person.
>
> "The test of a joint enterprise between the driver of an automobile and another occupant is whether they were jointly operating and controlling the movements of the vehicle. In order to constitute a joint enterprise so that the negligence of the driver of an automobile may be im-

puted to an occupant of the car, it is generally held that there must be a common purpose and a community of interest in the object of the enterprise and an equal right to direct and control the conduct of each other with respect thereto. In other words, the passenger, as well as the driver, must be entitled to a voice in the control and direction of the vehicle. There must be a community in the object and purpose of the undertaking and an equal right to direct and govern the movements and conduct of each other in respect thereof. Each must have the control of the means or agencies employed to prosecute the common purpose. The use of an automobile for the mutual benefit of co-owners is such a joint control that either one is the agent of the other in the conduct of their common undertaking, so as to render one chargeable with the contributory negligence of the other."

The test laid down is simple in its terms, but difficult of application to facts. The difficulty grows out of applying facts to such expressions as "common purpose and community of interest"; "equal right to direct and control"; "voice in the control and direction of a vehicle"; and others of similar meaning. Obviously, it excludes the casual pickup, or the familiar guest-passenger; and it has been held in this State not to make a wife who rides with her husband a party to a joint enterprise. *Bartlett* v. *Mitchell*, 113 W. Va. 465, 168 S. E. 662; although there is a conflict of authority on this point in other jurisdictions. The principal case on the subject in West Virginia is *Horchler* v. *Van Zandt*, 120 W. Va. 452, 199 S. E. 65, and that decision is in line with the general statement of the law as quoted above. Language employed in the case of *Coleman* v. *Bent*, 100 Conn. 527, 124 A. 224, is quoted and approved in the *Horchler* case. It was there stated, "In Coleman v. Bent, supra, is a terse and forceful statement which we approve as applying the correct factual test to factual cases where effort is made to invoke the doctrine under discussion. The Court said: 'We are of the opinion that the doctrine of joint adventure as applied to the operation of a vehicle owned by one of the occupants ought

to be restricted to cases where the common right to control its operation, and the correlative common responsibility for negligence in its operation, is either clearly apparent from the agreement of the parties, or is a logical conclusion from the facts found by the trier'." At an earlier point in the same opinion is this statement: "What sort of an arrangement will make the parties to it joint adventurers in the operation of the vehicle in which all are riding is well settled. The typical case is where two or more jointly hire a vehicle for their common purpose and agree that one of their number shall drive it. In such a case the possession of the vehicle is joint and each has an equal right to control its operation." As pointed out in the majority opinion, the question we have before us is not one of joint adventure but one of joint enterprise; but while the distinction between the two seems to be quite clear, there would seem to be no reason why there should be any particular difference as to general principles governing the two activities.

In *B. & O. Ry. Co.* v. *Green,* 136 F. 2d 88, a case originating in this State, it was held: "The doctrine of 'joint adventure' as applied to operation of vehicle owned by one of the occupants should be restricted to cases where common right to control its operation, and correlative common responsibility for negligence, is either clearly apparent from agreement of parties, or is logical conclusion from the facts." In *Miles* v. *Rose,* 162 Va. 572, 175 S. E. 230, it was held: "Mere joint interest in purpose of trip in automobile is insufficient to show 'joint enterprise' so as to make owner's negligent driving imputable to occupants of automobile, but there must be an express or implied agreement for joint control and operation of automobile." This was a case where the owner of an automobile and others, not members of his family, were returning from a trip to purchase liquor. In *Carroll* v. *Hutchinson,* 172 Va. 43, 200 S. E. 644, it was held that, "Sisters taking trip in automobile of father paying expenses are engaged in 'joint enterprise' so as to make driver's negligence imputable to sister not driving, if sisters have joint right of control and

if each is agent of the other." But the equal right of parties to a joint enterprise to manage the undertaking is stressed. In *Amarillo* v. *Rust,* (Tex.), 45 S. W. 2d 285, an injured child twelve years of age was held not included in a joint enterprise with her brother, aged fifteen, who was the driver of the wrecked automobile.

On the other hand, many cases hold that there is a joint enterprise where two or more persons making joint use of an automobile in carrying out what may be termed social engagements of different types. For example, in *Wentworth* v. *Waterbury,* 90 Vt. 60, 96 A. 334, it was held that, "The negligence of an automobile driver in sending the car down the embankment of a culvert was imputable to plaintiff, a passenger in the car, engaged with him in the common purpose of taking two ladies for an afternoon's drive to view a lake." In *Lucey* v. *Hope, etc.,* 45 R. I. 103, 120 A. 62, it was held that, "Where an automobile owned by a corporation, in which only two persons were interested, was being driven by one, accompanied by the other, on a mutual pleasure trip, they were engaged in a common enterprise, so as to make the negligence of the driver in injuring a third person in a collision chargeable to the passenger, and to render them jointly liable for such injuries." In *Union Bus Co.* v. *Smith,* 104 Fla. 569, 140 S. 631, it was held that, "Driver of borrowed truck and sister, both over 21, on trip visiting relative, held engaged in 'joint enterprise' for mutual pleasure with duty devolving upon both to prevent negligent driving." In *Wiley* v. *Dobbins,* 204 Iowa 174, 214 N. W. 529, there was a holding that, "Where all the occupants of an automobile were engaged in the common purpose of taking a pleasure trip together, in an action for damages arising out of a collision with another automobile, held, that the negligence of the driver was to be imputed to the other occupants of the automobile." In *Frisorger* v. *Shepse,* 251 Mich. 121, 230 N. W. 926, the Court said: "Occupants of automobile attending dance together, each sharing equally in expense, and having accident when returning, were engaged in joint enterprise, and driver's negligence was imputable to the others." In

*Hurley* v. *Spokane*, 126 Wash. 213, 217 P. 1004, it was held, "Where plaintiff and her brother, who drove their father's car, when she was injured while they were using it with their father's consent on a common venture, the contributory negligence of her brother was imputable to her." In *El Paso Electric Co.* v. *Leeper* (Tex.), 60 S. W. 2d 187, the holding was: "Where mother lent car to daughter, accompanied by escort and escort drove, daughter and escort were engaged in joint enterprise and daughter could not recover against negligent third person, where escort's negligence was a proximate cause of injury."; and a joint enterprise was treated in that case as one where each party has a right to control the conduct of the other, in respect to acts or omissions which might contribute to the injury of one of them. In *Roschman* v. *Sanborn*, 315 Pa. 188, 172 A. 657, was a case where a bus owned by a fraternal organization was used in an outing. It was held: "Where two or more persons jointly prosecute common purpose by means or agencies in control of which each has express or implied authority to act for all, negligence of one in management thereof will be imputed to all others."; and the trustees of the lodge were held not liable for the negligence of the driver of its bus for the reason that the driver's negligence was imputed to the other members of the party. In *Shirley* v. *American Automobile Ins. Co.*, 163 Wash. 136, 300 P. 155, the members of a family were held to be engaged in a joint enterprise while a guest riding in the same automobile was held to be not so engaged, and there was a similar holding, in substance, in *Bates* v. *Tirk*, 177 Wash. 286, 31 P. 2d 525.

It cannot be said that any of the cases cited above cover a case where the children in a family, with the consent of the parents, as in the case at bar, use an automobile purchased and kept for the use of the family, and where each and every member of the family is accorded the right to use the car as and whenever they desire to do so. I think, however, that, considered in connection with the family purpose and use doctrine established in this State, they give strong support to the theory that members

of a family, using a family automobile should be held to be engaged in a joint enterprise. The family purpose doctrine as applied to the use of automobiles is of recent origin. 5 Am. Jur. 704. The law in respect thereto may be said to be in its formative period, and it was inevitable that at some time the question of whether the use of a car by members of the family, for what may be termed family purposes, constituted a joint enterprise, would arise. In my opinion, we have reached that important question in this case, and the Court should lay down what it may believe to be the true rule to be applied in such cases. I readily concede that in cases where family use of an automobile is not present, more would be required to sustain the theory of joint enterprise, in the way of showing right to control the operation of the automobile than in the case at bar; but in a case, as here, where the record discloses that the automobile was used for the joint benefit and pleasure of five members of the family, and consent to its use by the parents being admitted, and conceded as a matter of course, it seems to me that each member of that family, so using the automobile has as much right to control its operation as any other such member; that in the use thereof they stand on the same level; and if they delegate one of their number to perform the mechanical acts in connection with operating the vehicle, they make him their agent, and his negligence is imputable to them.

On the whole, I am of the opinion that the members of the family of W. E. Stogdon and his wife, who was the mother of the plaintiff's decedent, occupying the Stogdon automobile at the time of the accident under consideration, were engaged in a joint enterprise; and if the operator was guilty of either primary, contributory or concurrent negligence, proximately contributing to the accident, such negligence is imputable to the plaintiff's decedent, and bars recovery. If, in such circumstances, there was not a joint enterprise, as between the members of this family, what was the relation between them? Certainly, the relation of host and guest was not present. Nothing in the record even tends to show that one of the

children had any greater control over the automobile than any other member of the family, unless it be the single fact that one of them could drive the automobile and the others could not, and this, of course, only applied to the mechanics of operating the same. It was a family car, used without even asking permission of the parents. That permission was taken for granted. In the use of the automobile, the children, and each of them, were the agent of the father and the mother. What is it that distinguishes the right to control the automobile as between the agents who used it on the fatal night, one from the other? True, W. E. Stogdon, Jr., drove the automobile, and was the only one who could drive, but his elder sister was present, and the decedent was fully capable of exercising the right of control along with the others. The automobile was used for the joint benefit of all of them in coming to Charleston and returning them to their common home at Sissonville. The fact that while in Charleston they separated and pursued different activities is, to my mind, unimportant. When they separated, it was with the understanding to meet again at agreed points, and this was done. It was after they had assembled, and were engaged in the common enterprise of returning home, that the fatal accident occurred. I repeat, if this was not a joint enterprise, what was it?

The fact that W. E. Stogdon, Jr., operated the automobile is immaterial, as is the fact that he was the only one of the party who could do so. As between him and the other members of the Stogdon family, he was their agent for that purpose. In the operation of an automobile some one person must sit under the guiding wheel, and perform the mechanical act of making the vehicle travel over the highway. The right of other parties to the enterprise to direct and control the operation of the automobile must, in the very nature of things, relate to general direction or control of the use of the same rather than the mechanical operation thereof. Backseat driving is not considered a safety measure in the operation of an automobile.

When we come to the question whether the driver of

the automobile was negligent, in such a way as to bar recovery by him, we find that that question was submitted to the jury on an instruction not here under attack. The jury, in finding for the defendant, necessarily found either (1) that the defendant was not guilty of negligence; or (2) if guilty of primary negligence, the operator of the automobile was guilty of either contributory or concurrent negligence, proximately contributing to the accident, either of which, in the circumstances of this case, would have barred recovery by the operator. If the operator, under the joint enterprise doctrine, was the agent of the family occupants of the automobile, then his negligence was imputable to them, and each of them, and there can be no recovery by the plaintiff in this case. If, in fact, the trial court should have held the case to be one of joint enterprise, as I think should have been done, then the giving of instruction No. 14 was not prejudicial. In fact, as I see the case, it gave the plaintiff something to which he was not entitled under the law. On the question of the negligence of the driver of the automobile, submitted to the jury, there was sufficient evidence to sustain the verdict, and under recognized rules we cannot disturb it on that point. I would, therefore, reinstate the verdict, and remand the case for the entry of judgment thereon, on the theory that the members of the Stogdon family, including plaintiff's decedent, were engaged in a joint enterprise, and that the negligence of the driver of the automobile necessarily found by the jury was imputable to plaintiff's decedent, and the plaintiff cannot recover.

But even if it be held that the doctrine of joint enterprise should not be applied, as I think it should be, where are we? W. E. Stogdon, Jr., the operator of the automobile, occupied some character of relationship to someone. We cannot seal this question in a vacuum, and ignore it. If he was not engaged in a joint enterprise with his brothers and sister, how came he into possession of the automobile? It may be suggested that he was the agent of his father, the legal owner of the automobile. In answer to this, I would say that the automobile being exclusively

used for family purposes, if he represented the family in any way, it would be as a representative of the father and mother. In such a situation, technical ownership is not always important. The automobile was available to him at all times for operation in keeping with the purpose for which it had been acquired, a family purpose, and the then members of the family, including the wife of the legal owner, are parties to that general purpose. If the person they chose to operate the automobile is guilty of some character of negligence in its operation, the negligence is theirs, because he was their agent or representative, and his negligence is imputable to them and they may not escape therefrom. In this case, if W. E. Stogdon, Jr., was guilty of negligence proximately contributing to the death of his brother, plaintiff's decedent, then, in a legal sense, the plaintiff and his wife, father and mother of the decedent, are chargeable with the consequences flowing therefrom. Under Code, 42-1-1, Code, 42-2-1, and Code, 55-7-6, any recovery in the case at bar would be equally divided between the plaintiff and his wife, it being shown that decedent was a boy of the age of seventeen years, and presumably unmarried. To permit recovery for their benefit would, in my opinion, operate to compensate them for the negligence of their representative, to whom they jointly entrusted the operation of the automobile involved in this action. It may be that this particular question was not raised in the trial court, but it is discussed in briefs of counsel in this Court. But the suggestion is made that even if the principles discussed above would apply to the father, they could not be applied to the mother of the decedent. Treating the family as a unit, I think the mother is barred along with the father. The case of *Pott's Admr.* v. *Traction Co.*, 75 W. Va. 212, 83 S. E. 918, throws little light on the question. That was an action by the administrator of the estate of an infant child killed through the alleged wrongful act of the defendant. At the time of the action, the father was the sole beneficiary of any recovery. It was contended that the negligence of the mother of the child

contributed proximately to its death. The court said the contention had not been sustained, but even if it had, it would not have barred recovery for the benefit of the father. Here is involved the use of a family automobile, kept for the use and pleasure of the family as a whole, and apparently so used with the consent and approval of all members of the family, including the mother. It is not at all probable that the continued use of this automobile by her children was permitted without her knowledge and approval. In my opinion, the father and mother occupy the same position as respects the right to participate in any recovery which may be had in this case.

Of course, on the last point discussed, that of the right of father and mother to benefit from any recovery, it must be held that the operator of the automobile was guilty of either contributory or concurrent negligence as a matter of law. I think the record before us justifies such a holding. The question was submitted to the jury, and it so found. Of course, the finding of a jury may be made upon less evidence than would be required of a court to hold that any fact had been established as a matter of law, but the finding of the jury is persuasive. The giving of instruction No. 14, even if erroneous, could have had no possible bearing on the question whether there was or was not contributory or concurrent negligence on the part of the operator of the automobile.

While, as stated earlier in this opinion, I do not think, in the circumstances of this case, that instruction No. 14 should have been given, and that the question therein presented to the jury should have been decided by the Court as a matter of law, I am of opinion that the instruction did not prejudice the plaintiff. I am of the further opinion that neither the father nor the mother, beneficiaries under the statute, may recover because in the operation of a family car, each and every member of the family was the agent of the father and mother, the heads of the family, and that they may not profit in any way, directly or indirectly, from the negligence of their agent. I would, therefore,

reinstate the verdict of the jury, and remand the action to the circuit court for the entry of judgment thereon.

Judge Rose authorizes me to state that he concurs in the views herein expressed.