RAY ELSWICK, JR., *etc.*

*v.*

CHARLESTON TRANSIT COMPANY

(No. 9697)

Submitted October 2, 1945.   Decided November 27, 1945.

242

*Salisbury, Hackney & Lopinsky* and *Samuel D. Lopinsky*, for plaintiff in error.

*Watts, Poffenbarger & Bowles, J. Blackburn Watts, L. F. Poffenbarger* and *Martin C. Bowles*, for defendant in error.

RILEY, JUDGE:

The Charleston Transit Company, a corporation, prosecutes this writ of error to a judgment of the Circuit Court of Kanawha County refusing a writ of error to a judgment of the Court of Common Pleas of said

county entered on a seven thousand dollar jury verdict, on the ground that the judgment of said Court of Common Pleas was plainly right.

The basis of this action is a collision between an automobile driven by Wm. E. Stogdon, Jr., and a bus of the Charleston Transit Company. The plaintiff, Ray Elswick, Jr., a guest-passenger, was sitting on the left in the rear seat of the Stogdon automobile immediately behind the driver. The collision occurred in the City of Charleston at a point on West Washington Street, just east of its intersection with B Street, shortly before midnight on January 23, 1943. Washington Street in this vicinity measures 29.172 feet from curb to curb and B Street 25.2 feet. The latter street intersects Washington from the south, but does not continue across the north curb. A steep hillside flanks Washington Street on the north beginning at the curb.

Parking was permitted along the south curb of Washington Street to the east and west of B Street. There is evidence that at the time of the collision a car was parked on Washington Street forty feet to the west of the west curb line of B Street, and a truck thirty-five feet to the east of the east curb line on B Street. T. M. Dangerfield, Captain of the Police Department of the City of Charleston, testified that parking was permitted along the south side of Washington Street and that parked cars usually take up seven feet.

The bus involved herein was proceeding east on Washington Street; the Stogdon car, a four-door Chevrolet sedan, west. The bus stopped just west of B Street near to or in the middle of Washington Street to take on two passengers. As the driver of the bus approached the center of the intersection, he says he saw the Stogdon car for the first time, and that it was approaching at a rapid rate of speed; that he drove his bus forward about the length of the bus; and seeing that the Stogdon car was not going to move to the north third of the pavement, stopped the bus, and the collision followed almost instantly.

The bus immediately after the collision was, according to defendant's evidence, in what might be termed the middle third of the street, i. e., north of the permissive parking lane, and parallel with the street. Plaintiff's witnesses, however, placed the bus at an angle, the front thereof being nearer the north curb. The Stogdon car had its left front wheel at or pinned under the left front of the bus, and its right rear wheel at or close to the north curb. The distance from the right front wheel of the car to the north curb of the street was placed from three to six feet. If the lesser distance be accepted, the point of impact of the bus and automobile would be in the north third of the street. So, under any view of the evidence, it is clear that a part of the bus was definitely to the north of the actual center of the street, measured from curb to curb.

The Stogdon car measured over all six feet, one inch wide and sixteen feet three inches long. The bus, eight feet and one and a half inches in width, and twenty-eight feet and four inches in length.

It is established that prior to the moving of either the bus or the Stogdon car after the collision, an ambulance appeared on the scene coming along Washington Street from the west, and drove in between the bus and the north curb. There is some conflict, however, as to whether this ambulance could have passed between the curb and the bus had the Stogdon car not been there. It is also established that a fire truck, seven feet two and one-half inches wide, pulled up beside the bus and to the north of the south curb.

Two of the occupants of the Chevrolet were killed, and the four other occupants, including plaintiff, were injured. See *Stogdon, Admr., etc.* v. *Charleston Transit Company*, 127 W. Va. 286, 32 S. E. 2d 276, in which this Court affirmed the action of the Circuit Court of Kanawha County in setting aside a verdict for the defendant because of the giving of an erroneous instruction. The witnesses in this case, except for Shelley Edward

Ashley, all testified in the above-styled case two weeks prior to the trial in the instant case.

After the verdict was rendered defendant moved that it be set aside, and a new trial awarded, which motion the court overruled.

Evidently taking the position that the evidence bearing on the question whether defendant was guilty of negligence, which was the sole proximate cause of plaintiff's injuries, was sufficient to sustain the verdict, defendant did not specifically point out in its bill of exceptions or its brief, or its assignments of error the court's ruling in holding that the question was one for the jury to decide. The question not being jurisdictional, as in the cases of *Cresap* v. *Kemble* and *Kemble* v. *Cresap*, 26 W. Va. 603; *Morris* v. *Gates*, 124 W. Va. 275, 20 S. E. 2d 118; and *Gapp* v. *Gapp*, 126 W. Va. 874, 30 S.E. 2d 530, the error, if any, not having been specifically pointed out in the bill of exceptions, or in defendant's brief, or the assignments of error, will not be considered on this writ of error. *Russel* v. *Huntington National Bank*, 162 F. 868, 89 C. C. A. (W. Va.) 558; *Christie-Myers Feed Co.* v. *Cleveland Grain & Milling Co.*, (C.C.A., W.Va.) 6 F. 2d 797 (certiorari denied, 270 U. S. 647, 46 S. Ct. 348, 70 L. Ed. 779) ; *Fuller* v. *Margaret Mining Co.*, 64 W. Va. 437, 63 S.E. 206. It therefore is unnecessary for us on this writ of error to state in further detail the evidence bearing upon that question.

Plaintiff's declaration is in two counts: The first count is based upon Section 24, Article IV of the traffic ordinance of the City of Charleston, passed June 21, 1938, and the second upon Code, 17-8-4. Section 24, Article IV of the ordinance provides in part: "A driver of a vehicle meeting another vehicle coming from the opposite direction on the same street or highway shall turn to the right of the center of the street or highway so as to pass without interference." Code, 17-8-4, reads: "An operator meeting another vehicle coming from the opposite direction on the same highway shall turn to the

right of the center of the highway so as to pass without interference."

Before the jury was impaneled the defendant moved the court to require the plaintiff to elect upon which count of the declaration he relied. The trial court's action in overruling this motion constitutes defendant's first assignment of error. It is contended that this error resulted in confusion of the issues throughout the trial of the case, and that a different state of facts would be required to show violation of the ordinance from those required to show a violation of the statute, because of the word "street" contained in the ordinance.

At the trial Article IV, Section 24, of the ordinance of the City of Charleston passed' on June 7, 1937, was introduced into evidence over objection. Article IV, Section 24 of the ordinance of June 21, 1938, pleaded in the declaration, and the same article and section of the ordinance of June 7, 1937, introduced into evidence, have identical language. Neither the alleged ordinance of June 21, 1938, nor the purported ordinance, effective November 30, 1942, adopting a code of ordinances for the City of Charleston, relied upon by the Court of Common Pleas in the written opinion, made a part of the record, was introduced in evidence. As the Court of Common Pleas of Kanawha County is not a municipal court of the City of Charleston, it could not take judicial notice of the alleged provisions of the 1938 and the 1942 ordinances. In *Boyland* v. *City of Parkersburg*, 78 W. Va. 749, pt. 3 syl., 90 S.E. 347, this Court held:

"Courts do not judicially take notice of the ordinances of municipal corporations unless directed by statute to do so, except that the courts of a municipal corporation of a city will take judicial notice of the ordinances of such city, but where an ordinance of a city is put in evidence without proof of the existence of such ordinance, or that it is an ordinance of the city, and no objections are made to its introduction at the time, proof of its existence and authenticity will be waived."

248

And the ordinance of 1938, pleaded in the declaration, and the one of 1937, introduced in evidence, having been enacted at different times by the Council of the City of Charleston as separate units of municipal legislation, cannot be regarded as one and the same ordinance. There is, therefore, as portrayed by this record, a variance between the allegations of the first count of the declaration and the proof. The alleged ordinance of June 21, 1938, not having been proved, the court's ruling on defendant's motion that plaintiff be required to elect upon which count of the declaration he relied presents a moot question.

Plaintiff's second assignment of error is based upon the trial court's exclusion of the following questions addressed to the witness Ruby Kiser and answers elicited from her:

"Q. You didn't sell him any more beer because Mrs. Neilson told you he was drinking and not to sell him beer?

"A. That's right, because she told me not to.

"Q. She advised you not to sell him any more beer?

"A. Yes, sir."

On cross-examination this witness gave a negative answer to the question: "Did you see anything about his conduct or actions there out of the ordinary, or not normal?" Peggy Neilson, the manager of Stonewall Inn where Ruby Kiser was employed, testified that William E. Stogdon, Jr., was intoxicated on the occasion of his visit to her place of business shortly before the collision. The testimony of Ruby Kiser objected to and excluded by the court was clearly inadmissible. Mrs. Neilson's statement to the witness was not a part of the *res gestae.* "Res gestae" literally means "things done". "To be admissible under the *res gestae* doctrine, a declaration or act which is offered in evidence must be a part of the litigated tranaction or occurrence and must tend to illustrate or explain it." 1 Jones on Evidence, Civil Cases, 4th Ed. 640, Section 348. "* * * only such declarations

are admissible which grow out of the principal transaction and serve to illustrate its character, and are contemporary with it and derive some degree of credit from it." 1 Jones on Evidence, Civil Cases, 4th Ed. 662, Section 358. In the trial of every case involving personal injuries, there must be a main act or transaction. Here the litigated transaction or occurrence is defendant's responsibility for plaintiff's injuries resulting from the collision between its bus and the Stogdon car; and Mrs. Neilson was neither a party to, an actor in, nor a witness to the occurrence upon which this action is based. Her instruction to Ruby Kiser was not admissible under the *res gestae* doctrine. But even if the testimony were admissible the court's error in excluding it would not be prejudicial. Mrs. Neilson testified fully as to what she observed concerning Stogdon's condition at the time he visited her place of business. Her alleged instruction to Miss Kiser was merely cumulative. "The propriety of admitting evidence which is merely cumulative is a matter for the determination of the court in the exercise of sound discretion. Error is not predicable of its admission or its exclusion unless an abuse of discretion is established." See cases cited under Notes 10, 11 and 12, 3 Jones on Evidence, Civil Cases, 4th Ed. 1674, Section 897.

Defendant's third assignment of error is based upon the trial court's refusal to permit a photograph purporting to show the location of an oil spot on the street at the place where the collision is alleged to have occurred. Defendant sought to prove the location of the left front of the Stogdon car by introducing testimony to the effect that one of the shock absorbers fastened to the left front wheel of the car had been knocked off, thereby releasing one pint of fluid. There was introduced substantial evidence tending to show the presence of the oil spot on the road after the collision occurred. The photograph in question was not corroborative of this testimony: it was taken some time after the collision. In the meantime the alleged oil spot may have spread or disappeared and an-

other spot caused by some other source. Moreover, the photograph does not with any degree of definiteness disclose the presence of the spot on the street at the place of the collision. It is obscure and not sufficiently clear to aid the jury. If admitted it might have served to confuse. For these reasons we think it was properly excluded. 2 Jones on Evidence, Civil Cases, 4th Ed. 1101, Section 581.

The refusal of the trial court of evidence of the customary place of travel for eastbound traffic on Washington Street at the place of the collision was not, in our opinion, erroneous. In the *Stogdon* case, this Court held that "impossibility of compliance with a regulatory statute excuses performance; customary noncompliance cannot." Notwithstanding custom, a motorist in this State is not legally precluded from using the left side of the highway. *Ewing* v. *Chapman*, 91 W. Va. 641, 647, 114 S.E. 158. Here we are concerned only with defendant's duty at the time and place the collision occurred. That duty under Code, 17-8-4, is that an operator of a motor vehicle meeting another vehicle coming from the opposite direction on the same highway or street shall turn to the right of the center of the highway so as to pass without interference. *Parks* v. *Tillis*, 112 W. Va. 295, 296, 164 S.E. 797; Elliott Roads and Streets, 4th Ed., Vol. 2, 1482.

Defendant assigns as error the admission of the testimony of the witness, Shelley Edward Ashley, who testified, over objection, that he heard a man dressed in the uniform usually worn by defendant's bus drivers at the scene of the collision shortly after it occurred say, "He said he was out in the street a little farther than he should have been, but he couldn't didn't seem to get it back." Prior to this question and answer, he was asked on direct examination: "Now, while you were there, Mr. Ashley, I want to ask you if you saw the driver of the bus, Mr. Carte, who was the driver at the time of the collision?" He answered that he did not know Mr. Carte, but there was a bus driver there. He was then asked,

"Did you hear him say anything about how the accident happened?" After two unsuccessful attempts to have this question answered, witness was asked, "Did you understand from what was said by this man you say was the bus driver, that he was driving the bus in the collision?", and he was permitted to answer, "That is the way I took it for granted that he was the man driving"; and then the court admitted in evidence the question and answer objected to. The admission of this evidence, in our opinion, constituted reversible error. In the first place the question whereby witness sought to identify the declarant virtually answered the question for the witness, and, secondly, the identity of the man in the uniform of a bus driver was not sufficiently established so that the jury could have reasonably inferred from the witness' testimony that the person referred to by the witness was, in fact, Carte.

Error is assigned to the giving of plaintiff's instruction No. 1, as modified. This instruction reads:

"The Court instructed the jury that it was the duty of the defendant, in the operation of its bus, upon meeting and passing the automobile in which plaintiff was riding, to turn its said bus to the right of the center of the street from curb to curb, and its failure to do so constitutes prima facie negligence; you are further instructed that if you shall believe from a preponderance of the evidence in this case that at the time and place of the accident complained of the vehicles were traveling upon the same street or highway, were meeting and intending to pass, and that the defendant failed to turn to the right of the center of the street or highway, unless its failure to do so was under the circumstances and conditions of the highway or under other facts and circumstances shown by the evidence as to render it impracticable for a prudent person exercising ordinary care to do so in the case at the time, then you may find for the plaintiff, if you shall further believe that the defendant's negligence, if any, was the proximate cause of the plaintiff's injuries, unless you

shall further believe that the plaintiff was guilty of contributory negligence."

Counsel for defendant contend that this instruction was improper in that it tells the jury that it was the duty of the defendant in the operation of its bus upon meeting and passing the automobile in which plaintiff was riding, to turn its bus to the right of the center of the street from curb to curb, and that its failure to do so constitutes primary negligence. It is contended that this part of the instruction is improper because the plain language of the city charter and the statute is overlooked in that the instruction does not qualify the bus operator's duty to turn to the right of the center of the street by insertion of the words contained in the ordinance and statute, "so as to pass without interference." It is also contended that the instruction is erroneous in that it omits any reference to "the traveled way". In *Parks* v. *Tillis, supra,* this Court held that the failure of the driver of a vehicle to turn to the right of the center of the street or highway when passing a motor vehicle approaching from the opposite direction constitutes *prima facie* negligence. Code, 17-8-4, in our opinion, provides that it is necessary that a vehicle approaching another vehicle coming in the opposite direction be turned to the right of the *center of the street or highway* so as to pass without interference, and not merely that it is necessary that the vehicle be turned to the right "so as to pass without interference." As heretofore noted, the record here discloses that according to defendant's evidence the bus, from the time the passengers were taken on just west of B Street in front of the Checkerboard Feed Store, was either in the center third of Washington Street or had turned out of it, and at the point of impact it was across the actual center of the street, measured from curb to curb. The collision having occurred near the intersection of Washington and B Street, and there being no cars parked along the southerly curb on Washington Street between the intersection and the truck, thirty-five feet to the east, it was proper for the court to submit to the

jury, as he did, the question whether the bus driver was derelict in his duty in not driving the bus upon the approach of the Stogdon car so as to bring it south of the center line of the street. But defendant says that the instruction charges the jury, in effect, that it was the duty of the bus driver to turn the bus to the right of the center of the paved portion of the street without regard to the location of the "traveled way." In support of this objection reference is made to Code, 17-1-3: "In the absence of any other mark or record, the center of the traveled way shall be taken as the center of the road." Here, Washington Street, as this record discloses, was well established on the ground, the outer boundaries being the north and south curbs of the street. The fact that the southern third of the street at times may have been used for parking purposes does not serve to confine the width of the street to the remaining two-thirds lying to the north thereof. In *Fleming, Admr.,* v. *McMillan,* 125 W. Va. 356, 26 S.E. 2d 8, this Court held that the traveled portion of a highway under Code, 17-8-12, which imposes a duty upon a motorist to reduce the speed of his vehicle to fifteen miles an hour when approaching a pedestrian walking on the traveled portion of the highway, includes only the paved portion thereof, and, as we have suggested, there is substantial evidence here that defendant's bus was beyond the center line of the paved portion of Washington Street at the time the collision occurred. See also *Linde Air Products Co.* v. *Cameron,* 82 F. 2d 22, 24. Under Code, 17-8-4, "the center of the highway", in our opinion, should be regarded as the center of the permanently paved or surfaced portion thereof. At the trial no objection to plaintiff's instruction No. 1 was made on the specific ground, as urged here, that it does not define "proximate cause." However, unlike *Pierson* v. *Liming,* 113 W. Va. 145, 167 S.E. 131, the instant instruction is not a binding instruction which ignored defendant's theory of the case.

The defendant objects to the trial court's refusal of its instructions Nos. 4, 8 and 21, which define the term

"proximate cause". "Proximate cause" is properly defined in these instructions, but the instructions are objectionable for the reason that all three would have made plaintiff guilty of contributory negligence if William E. Stogdon, Jr., the driver of the car, was himself negligent. This certainly is not true. Plaintiff was a guest-passenger seated in the rear of the car. The record does not tend to establish, as a matter of law, that Elswick should have known of young Stogdon's negligence in time to make an effective protest. In fact, one of the witnesses testified that the Stogdon car was being driven to the right of the center line of the road until almost immediately before the impact when it was seen to turn to the left.

Defendant's instruction No. 17 was, in our opinion, properly refused, because, as suggested by Judge Ritchie in his memorandum of opinion, made a part of the record, the instruction ignores the statutory duty of the driver of a motor vehicle to turn to the right of the center of the street when meeting a vehicle approaching from the opposite direction. This instruction imposes upon the driver of the Stogdon car the duty to turn to the right far enough so that the car would not collide with defendant's bus, while the latter was being operated to the left of the center of the street, though the Stogdon car may then have been entirely to the right of the center of the street.

Defendant's instruction No. 19, which seems to apply to this case the theory of sudden emergency, was also properly refused by the court. Defendant's bus was driven from the place where it received the passengers at B Street in an easterly direction down the center of the street when the impact occurred. A driver of a motor vehicle cannot invoke the doctrine of sudden emergency to relieve himself from liability to another whom he has injured as the result of his violation of a regulatory traffic statute. *Cline v. Christie*, 117 W. Va. 192, 184 S.E. 845, 855; *Chaney v. Moore*, 101 W. Va. 621, 630, 134 S.E. 204, 47 A.L.R. 800.

The refusal of defendant's instruction No. 20, even if improper, did not constitute prejudicial error for the reason that it is abstract. *Browning* v. *Monongahela Transportation Co.*, 126 W. Va. 195, 204, 27 S.E. 2d 481.

Defendant's instruction No. 13 submits to the jury the question whether in the circumstances of this case Ray Elswick was guilty of contributory negligence. In view of the fact that defendant's bus as the two vehicles approached each other, was proceeding in the center of Washington Street, there was no duty upon Ray Elswick to warn the driver of the Stogdon car, because the bus with its headlights burning was approaching in full view along the center of Washington Street, and, under the holding of this Court in *Parks* v. *Tillis, supra,* the driver of the Stogdon car had the right to expect that the bus driver would turn to his proper side of the street "so as to pass [the Stogdon car] without interference."

The basis of defendant's last assignment of error is that the verdict was excessive and indicates bias and prejudice on the part of the jury. The record discloses that plaintiff was severely injured. He was rendered unconscious by the force of the impact. He testified that he could not walk, jump or run well; that his ankle was sore; and that he could not stand on his toes. Dr. H. R. Glass of Charleston, his attending physician, testified that plaintiff sustained a large laceration on the forehead three to three and one-half inches in length, a concussion of the brain, transverse comminuted fracture of the left thigh which was splintered; that witness tried to set the bone by traction but failed, and then a pin was driven through the bone and afterwards witness made an open reduction, drilled three holes in the upper fragment and three holes in the lower fragment of the bone and held them together with a plate and screws. Dr. Glass further testified that there is a shortening of about a quarter of an inch in the left leg, a crushing injury to the left ankle, both in front and behind, and that plaintiff "had so much injury he is going to have some stiffness in the ankle after it gets well."

In view of this evidence, we do not think the verdict is sufficiently large that it "plainly appears to have resulted from mistake, partiality, passion, prejudice or lack of due consideration", within the holding of this Court in *Webb* v. *Brown and Williamson Tobacco Co.*, 121 W. Va. 115, 2 S. E. 2d 898.

We perceive no error in this case except the court's admission of the testimony of the witness Ashley, which, in our opinion, was prejudicial. For this reason alone, the judgment of the trial court is reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside;*
*new trial awarded.*

KENNA, JUDGE, CONCURRING:

Since it is impossible for the driver of an automobile to determine whether the highway he is on is "permanently paved" as distinguished from "temporarily paved", and since it is perfectly plain that Code, 17-8-4, was meant to apply to the center of a highway that would be visually apparent to vehicle drivers, I do not agree with the definition of the center of a highway as stated in the eighth syllabus of the Court's opinion. I believe that to permit the element of time to creep into what is a definition of a physical structure such as the center of a highway is robbing it of all usefulness. In addition, I fear it will confuse in some instances; for example, in the now rare instance where the portion of the highway that is paved, perhaps not permanently but for a use of indeterminate duration and therefore, to my mind, subject to Code, 17-8-4, is but a single traffic lane. In that case the center of the paved portion is of course not what is meant by the statute, because in order to permit the passage of vehicles, two lanes, one unpaved in the example, must be used. Neither is the center line of what is commonly known as the "paper location" the center of the highway, for in certain instances its center is not the center of the traveled or paved part. Instead

of undertaking in this case to define the center of a high-way in general terms to fit all cases to the exclusion of dirt roads, I would confine the syllabus to the class of highway now involved. This accident occurred upon a fully paved street. I would therefore make the syllabus in question read: "The center line of a fully paved street between curbs is the center line of a highway within the meaning of Code, 17-8-4."

Otherwise I concur.

Judge Lovins authorizes me to state that he concurs in this opinion.