W. G. McVICKER,

*Plaintiff and Respondent,*

vs.

EDWARD KURONEN,

*Defendant and Appellant.*

(No. 2582; April 21st, 1953; 256 Pac. (2d) 111)

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Edward S. Halsey of Newcastle, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Otis Reynolds of Sundance, Wyoming, and Smiley & Clark of Belle Fourche, South Dakota, and oral argument by Otis Reynolds and R. A. Smiley.

## OPINION

HARNSBERGER, Justice.

By direct appeal from the District Court's judgment-finding generally for the plaintiff and against the defendant upon all issues except plaintiff's claim for damages for loss of use of his truck—the defendant-appellant assigns as error—(1) receiving evidence of custom; (2) refusing the testimony of defendant as to value of plaintiff's truck; (3) that the judgment is not sustained by evidence; and, (4), that the judgment was contrary to law.

Appellant having conceded that failure to make offer of proof when defendant's testimony as to value of plaintiff's truck was refused, has precluded this court from determining whether or not such refusal was reversible error, the appellant is deemed to have waived this assignment of error.

It may be helpful to give a brief recount of the pleadings and the facts as we understand them.

Plaintiff's petition merely alleged defendant's negligence in causing collision between the trucks of the

parties; claimed damages for injury to plaintiff's vehicle and for loss of its use. Defendant's answer generally denied the allegations of plaintiff's petition and by cross-petition alleged plaintiff's negligence, in that (1) plaintiff's truck was driven on the left or wrong side of the road; (2) plaintiff's truck failed to yield that lane to defendant's truck or to turn to the right of the center of the road; and claimed damages for injury of defendant's truck, for loss of its use and for injury to its driver.

Answering defendant's cross-petition, plaintiff generally denied the allegations therein and, as a further defense, alleged a custom known to both drivers and previously adhered to by them to the effect that when traveling the dirt portion of the road on the bentonite haul, in which they were both engaged at the time of the collision, the driver of an empty truck would yield the right of way to the driver of a loaded truck whenever there were holes or soft spots in the road, so as to permit the loaded truck to proceed on the firm or hard part of the road; that such a condition existed at the time and place of the collision; that defendant's driver failed to yield the right of way in accordance with the custom, and also that defendant's truck was being driven at excessive speed; all of which circumstances constituted defendant's negligence and was the proximate cause of the collision.

The appellant asserts that because the claimed custom in this case conflicts with an express statutory provision, testimony tending to establish such a custom was immaterial and incompetent and, consequently, its admission over objection constituted reversible error.

Apparently, having assumed his contention to be correct, appellant seemingly advances to the conclusion

that uninfluenced by and without the aid of such custom testimony, there was insufficient evidence to sustain the judgment and that the judgment is contrary to law.

The salient facts appear as follows. About three o'clock P.M. on July 18, 1952, plaintiff's and defendant's trucks were engaged in hauling bentonite from a pit from which it was obtained to a stock-pile located about nine to ten miles distant. For approximately three miles, the trucks traversed a "real crooked" dirt road, which was constructed and maintained by the Bentonite Company. This dirt road connected with an oiled highway on which the trucks would travel for another six miles when they turned off the highway to the stock-pile. There was an average of nine to ten trucks employed in this hauling—a truck making from thirty to forty trips each day. The collision occurred on this dirt road at a point approximately one and one-half miles from the oiled highway where in coming from such highway the road curved to the right around an embankment, and at the end of the curve, the embankment flattened and the road straightened. The road at and near the curve was about 28 feet wide, sloped away from the inside or embankment side, and the outside of the road was "soft and wavy." Plaintiff's truck was loaded with bentonite; was proceeding on the straight dirt road in a northeasterly direction approaching the curve, when it was met by an empty truck driven by one Chapman. At the time of this meeting, plaintiff's truck was proceeding down the center of the road. Chapman pulled to his left according to custom and plaintiff's truck turned slightly to its left so as to pass the Chapman truck, which thus placed the plaintiff's truck in its left lane instead of its right lane of travel. There was a cloud of dust caused by Chapman's truck which obscured vision on the right

hand side of the road, but not on the left hand side where plaintiff's truck then was. As plaintiff's truck passed the Chapman truck, the plaintiff's driver for the first time saw defendant's truck emerging from the curve and from behind the embankment, and only from 100 to 125 feet away. Plaintiff's truck was traveling at about 20 miles per hour. According to defendant's driver, defendant's truck was also traveling at about 20 miles per hour; however, there was conflict in the testimony as to the speed of defendant's truck, the plaintiff's evidence indicating its speed to be 40 miles per hour or possibly more. Instead of turning to the left, as the Chapman truck had done, defendant's truck turned to the right, so that at the time of the crash the front wheels of defendant's truck were partly off the road where the embankment was leveling off and its rear wheels were still on the edge of the road.

Defendant's driver testified at one time that he first saw plaintiff's truck when about 100 yards distant— at another time he changed this distance to 100 feet —but, finally on cross-examination, insisted that it was 100 yards—300 feet. This driver also testified that he knew of and had observed the alleged custom in the use of the dirt road on these hauls by virtue of which the driver of an empty truck accorded to the driver of a loaded truck the right of way over the hard, firm or good portion of the road. This custom was also testified to by many of plaintiff's witnesses.

The testimony also showed that at and near the scene of the collision the firm or hard part of the road was on the center and to the left of center of the road in plaintiff's direction of travel, but that the outside or the plaintiff's right side of the road was passable, although, wavy, soft and dangerous for a loaded truck.

The applicable portion of our statute relied upon by the appellant is as follows:

*Section 60-506, Wyoming Compiled Statutes, 1945.* " * * * Whenever any person, traveling with any vehicle or conveyance on any road or public highway in this state, shall meet another vehicle or conveyance traveling in an opposite direction it shall be the duty of the driver of such vehicle or conveyance to turn promptly to the right of the center of the traveled road and to remain on the right of the center of the traveled road until such vehicle or conveyance has passed. * * * ."

Appellant says this law applies to the road concerned in this case, citing Johnston vs. Wortham Machinery Company, 60 Wyo. 301, 151 P. (2d) 89; Kaan v. Kuhn, 64 Wyo. 158, 187 P. (2d) 138, and decisions from Georgia, Wisconsin and California. We agree.

But, it is further contended that, because our statute prescribes a duty which, in effect, establishes the right of way or law of the road, to admit evidence of custom as to a different use of the road, is error, because to do so would be to allow custom to supersede and override the law. This is not so.

To agree that custom cannot establish a right of way contrary to that authorized by statute does not necessarily require that evidence of custom be excluded when its very existence and recognition by the drivers is such a factual circumstance as may affect the question of whether or not the action taken was that of a reasonable man under all the conditions present.

It does seem indisputable that, in the absence of any special circumstance, the user of a road may reasonably expect the driver of an oncoming vehicle to observe and comply with the statutory law of the road. It is the duty of the driver of the approaching vehicle to turn to his right of the center of the road and, or-

dinarily, drivers are entitled to rely upon compliance with that duty. The law of negligence, however, is predicated upon that which is required of a reasonable person in the light of all present circumstances.

Doubt has been expressed as to whether a valid law can be enacted which so positively requires adherence to a rule of the road as might inevitably result in collision and injury if it does not admit of some necessary exception. Certainly common sense dictates that such an interpretation be given of the meaning and application of a statute which would not render it unreasonable and oppressive. (State v. City of Sheridan, 25 Wyo. 347, 170 Pac. 1; 5 Am. Jur. 597, Sec. 165; Ticknor v. Seattle-Renton Stage Line, 139 Wash. 354, 247 Pac. 1, 47 A.L.R. 252.)

In this case, the circumstances were not limited to the physical elements present—such as the topography and condition of the area, speed, etc. They also involved a consciousness borne of knowledge and familiarity with conditions including custom. A stranger, at the same time and place, unfamiliar with the driving practices of those there engaged in the bentonite haul, could not reasonably be expected to anticipate that the road would be used other than as by law required. His driving on the right side of the road would be the act of a reasonable person. However, can it be said that a driver acquainted with the usual use of that road— who, in fact, himself conformed to that accepted use —has acted reasonably when he suddenly departed from the usual and did the unusual? We think not. Reasonable persons ordinarily do the usual—the customary—the expected—that which is natural; to do otherwise is to act unreasonably.

Hence it follows, that special circumstances must be given recognition in order to enable the trier of

fact to make a just determination of the question of negligence. That the special circumstance in this case occurred through a so-called "custom", "usage" or "practice", does not render its evidence any less competent, material or admissible than would be evidence of any other type of circumstance bearing upon the determination of the reasonableness or unreasonableness of the action taken,—the negligence or absence of negligence. The testimony received was admissible,— not in derrogation of the statute nor to prove that by virtue of custom a right of way was established contrary to the right of way given by our statute—but because it was a circumstance having direct bearing on the question of negligence.

A clear statement on the subject appears in Section 44 of 55 Am. Jur., p. 307, as follows:

"There is some uncertainty and conflict of authority regarding the effect of custom or usage in determining whether there has been a proper exercise of care. According to the general rule, conformity to custom is not in itself in the exercise of due care, and the generality of the usage of custom will not excuse a person from responsibility for his careless act when that custom or usage contravenes a statute or is unreasonable. Clearly, however, common practices and usages cannot be ignored in determining whether due care was exercised in a particular situation, and evidence of ordinary practice or uniform custom is generally competent either to prove or disprove negligence, when the act is not clearly negligent or negligent per se. Customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence, or fix a standard by which negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised".

What we have said is so amply supported both in text and by decision that to further quote at length

would unnecessarily lengthen this opinion. We, therefore, content ourselves with making reference to Sections 165, 168, 176 and 322, "Automobiles" of 5 Am. Jur. and cited cases thereunder. Also to Section 18, "Usages and Custom", 55 Am. Jur., and Section 34, "Negligence", 38 Am. Jur.

We have not overlooked citations noted by appellant given us in support of his contentions.

The quote from 1 (Part 2) Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., Section 651, page 515, omits an important qualification. Counsel quotes the following:

" * * * evidence of a custom, in contradiction of an ordinance or statute, laying down a rule of the road, is not admissible to excuse a violation thereof,"

but the balance of the sentence says—

"at least in the absence of evidence that the course of a traveler was influenced by, or taken in reliance on, such custom."

We do not disagree with the full statement.

The reference made to 25 C.J.S., Sec. 10-B, p. 91, purports to state only the general rule. Again we do not disagree, but we do recognize the exception to the general rule which is not there stated.

The citations of May vs. City of Laramie, et al, 58 Wyo. 240, 131 P. (2d) 300, and State vs. Stafford, 97 Mont. 275, 34 P. (2d) 372, do not involve questions of negligence and so are inapplicable.

The whole of the statement noted from 27 R.C.L. 164, suggests recognition that circumstances may affect the general rule.

Nor are we in disagreement with what is offered

from 172 A.L.R. 1142, that " * * * usage and custom do not justify negligence, and the generality of a usage and custom which contravenes a statute * * * does not serve to excuse a person from responsibility for his carelessness." We do not here say that custom excuses negligence, but that custom is a matter of fact to be considered with all other pertinent facts, in ascertaining whether there was or was not negligence.

All the elements necessary to justify the admission of custom evidence were not present in Elswick vs. Charleston Transit Co., 128 W. Va. 241, 36 S.E. (2d) 419, so that case is not helpful.

The statement in Stogdon vs. Charleston Transit Co., 127 W. Va., 286, 32 S.E. (2d) 276, that " * * * impossibility of compliance with a regulatory statute excuses performances; customary noncompliance cannot" is not at variance with what we have said.

Finally, appellant calls our attention to what was said in the case of Brown v. Wyoming Butane Gas Company, 66 Wyo. 67, 205 P. (2d) 116. In the Brown case, this court discussed a given instruction which was to the effect that the jury might take such custom into consideration, provided the evidence showed it existed, and it was known to or should have been known by the parties. Although this court found the giving of the instruction was not error, it commented—"We think that it would have been better if this instruction had not have been given," followed by a partial quotation from the Iowa case of Langner vs. Caviness, 238 Ia. 774, 28 N.W. (2d), 421, pointing out the general and usual holding of courts, that a custom contrary to statute could not be invoked to supersede or nullify the statute. However, this court immediately noted that "the record fails to disclose that either the driver of the gas tanker or the driver of the Butane tanker knew

at the time," the facts upon which the pleaded custom was predicated and, concluded, that the jury "could not have been misled or confused." Keeping in mind the point being discussed in the Brown case, it should be clear that it then seemed unnecessary to consider the final sentence of the last paragraph quoted from the Iowa case, which is as follows:

"But it does not follow that such custom cannot be considered in determining whether plaintiff was free from contributory negligence."

This case is different from the Brown case. Here it is shown by substantial evidence—including testimony of defendant's own driver—that the custom relied on was known to both drivers and that the circumstances indicated knowledge by the drivers of the existence of the facts upon which the custom was predicated.

It seems a reasonable inference to be drawn from the evidence that with 9 to 10 trucks engaged in a ten mile haul of bentonite, each truck making from 30 to 40 trips a day—approximately 300 trips—or a total traffic of 600 vehicles, going and coming, that the trucks coming from the pit would be loaded and those returning would be empty.

Under these conditions, to admit evidence respecting the asserted custom as bearing on the question of negligence, is not to disregard, to supersede nor to nullify our statute.

That our laws prescribe the respective duties of drivers of vehicles on meeting and passing—thus defining in a fashion the rule of the road, or, as is sometimes said, granting the right of way,—does not relieve a driver of the duty to exercise reasonable care to avoid collision with other vehicles. As was said in Garner vs. Brown, 31 Wyo. 77, 81, 82; 223 Pac. 217, 218—

"though one is given the right of way by the law aforesaid, it remains his duty to exercise reasonable care to avoid collisions with other vehicles."

(See also Christensen vs. McCann, 41 Wyo. 101, 107, 108, 282 Pac. 1061, 1063; Ries vs. Cheyenne Cab & Transfer Co., 53 Wyo. 104, 117, 79 P. (2d) 468, 472, 473.)

and we agree with the Iowa court's statement in the Langner case, supra:

"All motorists are under a twofold duty; to comply with applicable traffic regulations and to exercise the care of the ordinary prudent person under the circumstances. The requisite degree of care in the performance of the second duty is measured by the care ordinarily exercised under the conditions. On the question whether the plaintiff performed the second of these two duties, defendants were entitled to offer evidence of what was usual and customary under like circumstances."

Taking into consideration all of the circumstances present, which include defendant-driver's familiarity with conditions proximate to the scene of the accident; his speed; his knowledge of the curve; the custom of permitting the laden vehicle the use of the best portion of the road; the relative time and opportunity the respective drivers had after seeing each other to avoid collision; the necessity for plaintiff's driver to depart from the statutory rule of the road in order to avoid collision with the Chapman truck; the presence of the cloud of dust obscuring vision over a portion of the road, as well as the defendant's anticipation of being met by an approaching vehicle reasonably expected to be using the hard or better part of the road, we cannot say that, as a matter of law, the plaintiff was negligent. At most, the question of negligence was one of fact. The court below determined this issue adversely to the defendant. Inasmuch as this finding was amply supported by the testimony of plaintiff's witness, and,

in most particulars, by the statements of the defendant's driver himself, the conclusion of the trial court is based upon substantial evidence. (Dulaney vs. Jensen, 63 Wyo. 313, 181 P. (2d) 605). It follows that the finding of the trial court must be upheld.

The plaintiff-respondent has also given notice of and has filed a motion to have this appeal dismissed because of alleged defects in the giving of notice of appeal and making proof of its proper service. In response, the appellant has petitioned this court for leave to amend the proof of service. Both parties have filed affidavits and briefs in support of their respective positions on the motion to dismiss and the petition to amend, and these matters were orally presented at the same time the arguments were had upon the merits. Because of the conclusions herein set forth, it is deemed unnecessary to pass upon these matters.

Having concluded there was no error in the lower court's admission of testimony as to the claimed custom, we must also find that there is sufficient substantial evidence to justify the judgment and that it was not rendered contrary to law.

Consequently the judgment is affirmed.

BLUME, Chief Justice, and RINER, Justice, concur.