375 P.2d 364

**AMERICAN SMELTING & REFINING CO., and H. Crawford, Appellants,**

v.

**Nicholas D. WUSICH and Elizabeth S. Wusich, husband and wife, Appellees.**

No. 7033.

Supreme Court of Arizona.

En Banc.

Oct. 25, 1962.

Conner, Jones & Murphy, Tucson, for appellants.

Udall & Udall, Tucson, for appellees.

BERNSTEIN, Chief Justice.

On January 6, 1959, the plaintiff was driving his automobile in a westerly direction on "Lateral 8½", a paved county highway near Marana, Arizona. He was un-

aware that he was approaching an intersection of Lateral 8½ with Sanders Road, a graded dirt road crossing the highway at approximately right angles. There were no signs on either road which would warn travelers of the intersection. Neither road was marked with a stop sign. Plaintiff was directing his attention principally to the left, as he was looking for a driveway into a ranch where he intended to make a business visit. His visibility to the right was somewhat obscured by the raised bank of the ditch from which "Lateral 8½" takes its name. The defendant Crawford, an employee of the corporate defendant, was proceeding south on Sanders Road in a loaded diesel truck semi-trailer combination weighing approximately 31 tons. Plaintiff was traveling about 35–40 miles per hour, defendant about 30–35 miles per hour. Defendant Crawford did not see the plaintiff until Crawford was about 30 feet from the intersection. Plaintiff saw the defendant about the same instant. The right front of plaintiff's car and the left front of defendants' truck collided seriously injuring the plaintiff and causing damage to both vehicles. Plaintiff's car skidded 52 feet prior to impact while defendants' truck showed skid marks for 56 feet after the point of impact.

Plaintiff brought this action against defendants to recover for personal injuries, and judgment was rendered on a jury verdict awarding plaintiff $25,000.00. Defend-

ants' appeal from this judgment raises two issues: (1) Did the court err in admitting evidence of, and permitting the jury to consider a local custom to the effect that drivers on the north-south roads would yield the right of way to vehicles on the east-west roads which paralleled the lateral ditches?; (2) Did the court err in instructing the jury on the principles of "last clear chance"?

At the trial, a witness called by the plaintiff testified that he had lived in the area for ten years; that he had driven past the intersection where the accident occurred several times a day during that time enroute to his home on Sanders Road a short distance north of the accident scene; that a general custom existed in the area to the effect that traffic on east-west roads had the right of way over traffic on the north-south roads. He stated:

"* * * I never pull out of any north-south bound road without giving clear right-of-way.

"Q. You have observed other people doing that?

"A. Yes."

On cross-examination the witness testified as the reason for the custom:

"* * * The Laterals [ditches] are built up and the—all the roadbeds following the Laterals are much lower than the general lay of the land, some six, seven feet, and these, too, brought

about the customs we have been following."

There was no direct evidence that the defendant Crawford knew of this custom, however there was evidence that Crawford had driven his truck through the area three to four times a week during the six years he had worked for the corporate defendant, and also that he had driven over the roads in the area in his private automobile. On the basis of this evidence the court made the following remarks to counsel at the time evidence of the custom was admitted:

"Well, the Court has to take into consideration Mr. Crawford's testimony, his driving in the area; he has been driving for the defendant corporation five or six years—six years for the defendant corporation, and he testified that he made several trips a week hauling these balls of steel for this purpose, and various times he went over these roads, and of course, this road and 8; he followed 8 and 8½. I mean 8 was followed more than 8½, but they are all in the same neighborhood, same section. 8 is a mile from 8½. Whether or not he knew of any custom or usage concerning this or not, there is no positive testimony that he did, but a person driving that area six years, making these trips from Phoenix, and particularly in this area, if there is any

presumption, it is presumed against him, that he knew the custom."

The court instructed the jury:

"The Jury has heard certain evidence relating to the custom, practice and usage of motorists on the highways involved in this case. With regard to this evidence you are instructed that custom, usage, and practice can not change or overcome a statute contained in the Motor Vehicle Code, nor will it excuse a person from responsibility for a careless act when the custom is unsafe or unreasonable.

"However, the Jury has a right to consider common procedures and usages in determining whether the parties to this case used due care; whether a driver follows an established custom or practice, or whether he fails to do so are factors and circumstances which you may weigh and consider with all the other evidence in the case in determining whether or not the legal standard of ordinary care was exercised."

Defendants contend that admitting evidence of the existence of the custom, and giving the above instruction was prejudicial error on the part of the trial judge for the reasons that the custom was not known to be uniform and certain and for the reason that it was contrary to the Motor Vehicle Code section governing right of way.[1]

1. A.R.S. § 28–771(B), at the time of the accident, read: "When two vehicles enter an intersection from different highways at approximately the same time

Where the custom or practice does not conflict with a statutory standard of conduct, because it applies in situations which the statutes do not govern, evidence of the custom is admissible, Rivera v. Hancock, 79 Ariz. 199, 286 P.2d 199 (1955); Irwin v. Graham, 62 N.M. 72, 304 P.2d 875 (1956); Barnes v. Davidson, 190 Or. 508, 226 P.2d 289 (1951). In such situations customary practices are relevant to the issue of the exercise of due care by the parties, but they do not necessarily define the standard of care required. A custom may exact more or less than the demands of due care, but it may be considered by the jury in determining whether the demands of due care were met, Barnes v. Davidson, supra.

A motorist who has the right of way under the statute must nevertheless exercise reasonable care to avoid harm to others, Langner v. Caviness, 238 Iowa 774, 28 N.W.2d 421, 172 A.L.R. 1135 (1947); Purdie v. Brunswick, 20 Wash.2d 292, 146 P.2d 809 (1944); Kientz v. Charles Dennery, Inc., 17 So.2d 506 (La.App. 1944). He must consider all of the circumstances existing at the time and place which he knows or ought to know, and the existence of a local custom may be such a circumstance.

In McVicker v. Kuronen, 71 Wyo. 222, 256 P.2d 111 (1953) the plaintiff, who was driving his loaded truck to the left of the center of the road at the time of a collision with the defendant, relied upon the custom of drivers of unloaded trucks to yield the right of way to drivers of loaded trucks whenever there were holes or soft spots in the road, so that the loaded truck could drive over the hard or firm portion of the road. The court recognized that this custom conflicted with the governing Wyoming statute, but said:

"That our laws prescribe the respective duties of drivers of vehicles on meeting and passing—thus defining in a fashion the rule of the road, or, as is some times said, granting the right of way,—does not relieve a driver of the duty to exercise reasonable care to avoid collision with other vehicles. As was said in Garner v. Brown, 31 Wyo. 77, 81, 82, 223 P. 217, 218—'though one is given the right of way by the law aforesaid, it remains his duty to exercise reasonable care to avoid collisions with other vehicles.' * * * [Citations omitted.] [W]e agree with the Iowa court's statement in the Langner case, supra: 'All motorists are under a two-fold duty: to comply with applicable traffic regulations and to exercise the care of the ordinary prudent person under the circumstances. The requisite degree of care in the performance of the second duty is measured by

the driver of the vehicle on the left shall yield the right of way to the vehicle

on the right."

the care ordinarily exercised under such conditions. On the question whether plaintiff performed the second of these two duties defendants were entitled to offer evidence of what was usual and customary under like circumstances.' " 71 Wyo. at 235, 236, 256 P.2d at 116.

The Wyoming court affirmed a judgment in favor of the plaintiff.

 In the case before us, unlike in the Wyoming case, compliance with the custom would not have required a violation of the statutory standard by the defendant Crawford. The statute giving the motorist on the right the right of way does not require that he continue his approach to the intersection with unslackened speed. It requires that the motorist on the left yield to the driver on the right, but it does not purport to govern the conduct of the driver on the right. He thus is governed by the common law duty of using due care under the circumstances. One of the circumstances which can be proved and considered by the jury is his knowledge that motorists on an east-west highway habitually pass an intersection without yielding the right of way to motorists on a north-south road.

"* * * The testimony received was admissible,—not in derogation of the statute nor to prove that by virtue of custom a right of way was established contrary to the right of way given by our statute—but because it was a circumstance having direct bearing on the question of negligence." McVicker v. Kuronen, supra, 71 Wyo. at 232, 256 P.2d at 114.

See also 55 Am.Jur., Usages and Customs § 44 p. 307.

In an analogous case cited by the defendants, the Supreme Court of Kansas held that evidence of an alleged custom or practice which is contrary to the existing law could not be used either to establish or defeat an action, nor could such evidence be received, Wood v. Melton, 179 Kan. 128, 293 P.2d 252 (1956). This decision ignores the possible uses of such evidence for purposes other than altering the effect of the statute, and, in our opinion, is not justified by the general rule noted hereafter that evidence of a custom or usage will not be received *for the purpose* of excusing or justifying a violation of a statute. Other authorities relied on by the defendants are not inconsistent with our decision in the present case.

 When evidence of custom is admitted to assist the jury in determining the duty of care required of the defendant, the custom does not itself define the standard of care required. Non-compliance with the custom is not negligence per se. It is but one of the circumstances which the jury may weigh in reaching its decision. Barnes

v. Davidson, 190 Or. 508, 226 P.2d 289 (1951).

Moreover, it must be shown that the defendant knew of the custom, or as a reasonable prudent driver ought to have known of the custom, before the existence of the custom becomes relevant as one of the circumstances under which the defendant acted. Hot Springs St. Ry. Co. v. Adams, 216 Ark. 506, 226 S.W.2d 354 (1950); Klaber v. Williams Tractor Co., 307 S.W.2d 204 (Ky. 1957). In the instant case the trial judge indicated to defendants' counsel at the time evidence of the custom was received during plaintiff's case in chief that under the circumstances it would be presumed that defendant Crawford knew of the custom. During the defendants' case in chief Crawford was not called to deny his knowledge of the custom. Again, at the time instructions were settled the court indicated that the instruction was to be given on the presumption that Crawford knew of the custom since he had not denied it. This was as much as an invitation to defendants to reopen their case if they wished to deny knowledge of the custom.

"It is the rule that, where the existence or nonexistence of a certain fact is within the peculiar knowledge of a witness, and he fails to testify as to

the fact, the trier of fact may justly draw the inference that the true fact is against his interest," Starkweather v. Conner, 44 Ariz. 369, 377, 38 P.2d 311, 314 (1934).

We therefore hold that, when the jury may find that a defendant knew of the existence of a custom which governed traffic at the scene of an accident, evidence of the custom may be considered by the jury as one of the circumstances affecting the defendants' duty to use due care.

However, evidence of a custom or practice is not admissible where it is offered for the purpose of excusing or justifying conduct which violates a statutory standard, Simon v. Carroll, 241 Minn. 211, 62 N.W.2d 822 (1954); Reinders v. Olsen, 60 Cal.App. 764, 214 P. 268 (1923), unless violation of the statute is considered to be only prima facie evidence of negligence, Howard v. Marchildon, 228 Minn. 539, 37 N.W.2d 833 (1949); Thelen v. Spilman, 251 Minn. 89, 86 N.W.2d 700, 77 A.L.R.2d 1315 (1957). Obviously, where violation of a statute is negligence per se, evidence of a custom sanctioning violations of the statute would be irrelevant on the question of the existence of negligence.[2]

Thus, it should be clear that the evidence of the custom in this case could

2. This court has recognized the well established rule that evidence inadmissible for one purpose may be admissible for another purpose, Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262 (1952).

not be used to change the standard of conduct required of the plaintiff in this case by A.R.S. § 28–771, supra, note 1, nor to justify his violation of that section.[3] Therefore the instruction given by the court, supra, should be modified to apply only to the issue of defendants' exercise of ordinary care.

At the trial of this case the court gave an instruction on the principles of last clear chance. Plaintiff-appellee admits that this instruction was an incorrect statement of the law in view of this court's decision in Odekirk v. Austin, 90 Ariz. 97, 366 P.2d 80 (1961), which was handed down after the instant case was tried. Plaintiff contends, however, that reversal would be improper since defendants-appellants' assignment of error did not challenge the correctness of the instruction, but only the propriety of giving any instruction on last clear chance. Plaintiff argues that the situation is one where the jury may consider last clear chance; defendants argue that it is not. We need not concern ourselves with plaintiff's arguments about the office of an assignment of error, since we agree with defendant that any instruction on last clear chance would be improper on the facts of this case.

Plaintiff points out that when the defendant Crawford was a short distance from the intersection he saw a car driven by one Castillo cross the intersection from right to left. He argues that this was a forceful reminder that he was approaching the intersection—a situation of peril—and that at that time he had the last clear chance to slow down and avoid the peril. To adopt this argument would be to hold that any driver who knowingly approaches an apparently clear intersection without slowing down has the last clear chance to avoid any accident that may result.

A second argument of the plaintiff is that, although the defendant Crawford denied that he saw the plaintiff until Crawford was about 30 feet from the intersection, he admitted that he had looked to the left in plaintiff's direction. Since the defendant Crawford's eye level was 8 feet above ground level, this argument goes, to look is to see, and the jury could have found that Crawford saw the plaintiff before he stated he did.

The fallacy of both of these arguments is this: Before the doctrine of last clear chance applies in the situation

3. In most jurisdictions the plaintiff's violation of the statute, which could not be excused by the existence of a conflicting custom, would preclude his recovery, absent a last clear chance situation or wanton negligence on the part of the defendant. However, under Arizona's constitution the legal and factual issues of contributory negligence by the plaintiff are questions for the jury. Wolfswinkel v. Southern Pacific Co., 81 Ariz. 302, 305 P.2d 447 (1956) affirmed on rehearing 82 Ariz. 33, 307 P.2d 1040 (1957); Michie v. Calhoun, 85 Ariz. 270, 336 P.2d 370 (1959); Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962).

where an inattentive plaintiff's negligence continues up to the time of the accident, it must be shown that the defendant "actually saw or knew of the plaintiff's situation *and realized or ought to have realized that the plaintiff was inattentive * * *.*" Odekirk v. Austin, 90 Ariz. 97, 102, 366 P.2d 80, 83 (1961) (emphasis added) ; Restatement of the Law, Torts, § 480.[4] There is no evidence whatever which would permit the jury to find that the defendant realized or ought to have realized that the plaintiff was inattentive. If the defendant had indeed observed the plaintiff (and we think the inferences leading to this conclusion very weak) he would have observed the plaintiff slow from 50 miles per hour to about 35 miles per hour as he approached the intersection because he anticipated a turn into a driveway on his left. Nothing about the plaintiff's behavior would have led the defendant to believe that the plaintiff was not aware of the intersection or that he would not stop in time until the situation was *in extremis* and defendant's last clear chance to avoid the collision had passed.

It was error to give any instruction on the principles of last clear chance. The judg-

ment is reversed and the case remanded for a new trial.

STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., and WARREN L. McCARTHY, Superior Court Judge, concur.

Vice Chief Justice UDALL, having disqualified himself, the Honorable WARREN L. McCARTHY, Judge of the Superior Court of Maricopa County, Arizona, was called to sit in his stead and participate in the determination of this appeal.

---

4. § 480 Last Clear Chance; Negligently Inattentive Plaintiff. A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant

 (a) knew of the plaintiff's situation, and

(b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

(c) thereafter is negligent in failing to utilize with a reasonable care and competence his then existing ability to avoid harming the plaintiff.