501 P.2d 32

**Henrietta JOHNSON, Guardian ad Litem of Anna Johnson, a minor, and Henrietta Johnson and James Johnson, her husband, Appellants,**

v.

**Lynda Lucille GARNAND and John Doe Garnand, her husband, Appellees.**

**No. I CA–CIV 1553.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 26, 1972.

David Neal Rosen, Phoenix, for appellants.

Jennings, Strouss & Salmon, by John S. Hobbs, Phoenix, for appellees.

HAIRE, Chief Judge, Division 1.

On this appeal from a judgment resulting from a jury verdict for the defendant-appellees (hereinafter "defendant"), the plaintiff-appellants (hereinafter "plaintiff") contend that the trial judge committed error in the admission of evidence and in the giving of instructions to the jury concerning certain "custom" evidence.

The litigation arose out of a rather peculiar factual setting involving an automobile collision in a left-turn lane situated on Thomas Road in the City of Phoenix, Arizona. Both automobiles were traveling in an easterly direction prior to the time of the collision, and both drivers intended to make left turns so as to proceed north on 48th Street. South of Thomas Road there are two separate 48th Streets, paralleling each other and divided by a canal. The westernmost 48th Street abuts into Thomas Road to form a "T" intersection ending at that point. Immediately to the north of the stem of this "T" is a driveway leading from Thomas Road into a restaurant parking lot. The easternmost 48th Street continues north and forms a normal intersection with Thomas Road. Defendant entered the left-turn lane at its inception approximately 100 feet west of the "T" intersection. Plaintiff did not enter the left-turn lane until she arrived at the point where the westernmost portion of 48th Street going south formed the "T" intersection with Thomas Road. After stopping at a crosswalk at this location, plaintiff pulled into the left-turn lane in front of defendant's vehicle, and there was a collision involving defendant's vehicle and the left-side of plaintiff's vehicle.

A City of Phoenix ordinance provides as follows:

> "When authorized signs, *pavement markings,* or other traffic control devices are placed *within or on the approach to an intersection* directing the course to be traveled by vehicles traveling thereat, *no driver of a vehicle shall disobey* the direction of such signs, *pavement markings,* or other traffic control devices." (Emphasis added). Code of the City of Phoenix, Arizona, Vehicles and Traffic, Art. IV, §§ 36–45 (1969).

It was plaintiff's contention that certain pavement markings at these intersections required that a person entering the left-turn lane at a point west of the "T" intersection (where defendant entered it) must turn left into the restaurant parking

lot, and that defendant's action in proceeding past the entrance to the restaurant parking lot was a violation of the ordinance as implemented by the pavement markings and thus constituted negligence per se. On the other hand, defendant contended that her actions were lawful, and that it was plaintiff who had violated the ordinance by her "late" entrance into the left-turn lane.

The meaning to be given to the pavement markings involved was not defined by statute or ordinance. Therefore, a considerable portion of the evidence related to the meaning to be given to the pavement markings, with plaintiff's expert witness testifying to a meaning consonant with plaintiff's theory of the case, and defendant's expert witness testifying to a meaning consonant with defendant's theory.

No question has been raised on appeal concerning the propriety of expert witness testimony of this nature, and we express no opinion in that regard. Further, we can find no indication that either party requested the trial court to determine as a matter of law the meaning to be given to the ordinance as implemented by the pavement markings. Apparently both parties assumed that the markings were ambiguous, and that the ambiguity should be resolved through expert testimony. The only instruction given concerning the ordinance was the standard instruction to the effect that a violation of an ordinance constitutes negligence per se.[1] No objection was made to the giving of this instruction.

The defendant, over objection, presented testimony of three witnesses who testified as to the usual procedure of motorists turning left off of Thomas Road so as to go north on 48th Street. Mr. Norman Barnett of the Phoenix City Traffic Engineer's Office said that the markings at this intersection had been the same since 1961. He testified that he observed traffic at this intersection during the morning, afternoon and at night on four different occasions over a seven or eight month period between the time the suit was filed and the time of trial. He stated that these observations were made at different hours of the day and on different days of the week. Mr. Barnett testified that 90% to 95% of the drivers who made the left turn north on 48th Street, as was intended by both the plaintiff and the defendant, entered the left-turn lane and made the turn itself in the manner contemplated by the defendant.

Mr. John Yurochko of the City Engineer's Office made a more formal traffic survey at the scene of this accident at Mr. Barnett's direction. He made six separate traffic counts, each of one hour's duration on four different days. He counted cars making left turns at this intersection. As an overall result of these counts, Mr. Yurochko established that 94% of the drivers who made the same left turn that the parties to this action intended to make did so in the manner used by the defendant.

The plaintiff's expert witness, Dr. Judson Matthias, also made a count of left-turning vehicles at this intersection. He was there on three or four occasions in November of 1969. Despite the fact that he testified that the proper way to make this turn, in view of the street markings, was the way in which plaintiff intended to do it, Dr. Matthias also testified that 83% of the motorists he counted made the turn in the manner used by the defendant.

A fourth witness, the investigating police officer, Allan White, also testified about the custom of left-turning drivers at this intersection. His testimony on this point was given outside the presence of the jury, but since the plaintiff in her opening brief has referred to this testimony as though relevant and pertinent, we will summarize it here. Officer White testified that he had been past this intersection and the accident scene at least a dozen times a week for several years before the trial, and that his experience was that 90% of the drivers entered the left-turn lane as the defendant did.

[1]. The instruction given was MARJI No. 11 and No. 11 alternate.

On appeal, plaintiff raises several questions concerning the admissibility of the foregoing evidence relating to the practices of other drivers. We will consider first the question, phrased in plaintiff's words: "Can evidence of an alleged custom be introduced to excuse the violation of an ordinance?" The answer, under Arizona law, is clearly no. American Smelting & Refining Co. v. Wusich, 92 Ariz. 159, 375 P.2d 364 (1962). However, this answer is of no benefit to plaintiff for the simple reason that the evidence here involved was not introduced by defendant for the purpose of excusing defendant's violation of the ordinance, if in fact defendant violated the ordinance. Furthermore, the question assumes that an ordinance was violated by defendant—an issue which might well have been decided against plaintiff.

If we assume that plaintiff's construction of the ordinance was correct, and that defendant violated the ordinance and was thus guilty of negligence per se, evidence of a local custom contrary to the ordinance would still be admissible as bearing upon the issue of plaintiff's contributory negligence. As stated by the Arizona Supreme Court in American Smelting & Refining Co. v. Wusich, *supra*:

> "A motorist who has the right of way under the statute must nevertheless exercise reasonable care to avoid harm to others, Langner v. Caviness, 238 Iowa 774, 28 N.W.2d 421, 172 A.L.R. 1135 (1947) ; Purdie v. Brunswick, 20 Wash. 2d 292, 146 P.2d 809 (1944) ; Kientz v. Charles Dennery, Inc., 17 So.2d 506 (La.App.1944). He must consider all of the circumstances existing at the time and place which he knows or ought to know, and the existence of a local custom may be such a circumstance." 92 Ariz. at 164, 375 P.2d at 367.

On the other hand, if we assume that the jury accepted defendant's construction of the ordinance, we would have a situation where plaintiff's actions constituted a violation of the ordinance which would make plaintiff guilty of negligence per se, but such negligence per se would not necessarily preclude the plaintiff from recovering damages if it could be shown that defendant was also negligent. Heimke v. Munoz, 106 Ariz. 26, 470 P.2d 107 (1970) ; Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962) ; American Smelting & Refining Co. v. Wusich, *supra*. Under this assumed finding by the jury, the custom evidence would not be contrary to the ordinance, but rather would be in accord with it, and would constitute evidence showing an absence of negligence on defendant's part—as evidence that defendant's actions were in accord with the required standard of care. Again, as stated in American Smelting & Refining Co. v. Wusich, *supra*:

> "In such situations customary practices are relevant to the issue of the exercise of due care by the parties, but they do not necessarily define the standard of care required. A custom may exact more or less than the demands of due care, but it may be considered by the jury in determining whether the demands of due care were met, [Citation omitted]." 92 Ariz. at 164, 375 P.2d at 367.

Under such circumstances the plaintiff's knowledge of the customary practices involved would not be particularly relevant, since the evidence is not introduced to show a deviation from a common law or statutorily required standard of care, but rather is admitted as some evidence of that standard of care which a reasonably prudent driver would exercise under the same circumstances. In any event, there was adequate evidence in this case from which the jury could have inferred that plaintiff did in fact have knowledge of the customary practices of drivers making left-hand turns at this particular intersection, notwithstanding her express disclaimer of knowledge of such practices.

The evidence showed that plaintiff had lived about a mile and a half south of the intersection involved and two blocks west

of it for some eleven years prior to the accident. She had been by this intersection many times before the accident, and, indeed, had made the same turn she was attempting on the day of the accident on many prior occasions. She was familiar with the intersection and the street markings as they existed on the day of the accident. The street markings involved in this action had been the same at this intersection since 1961. Between 1961 and 1968, the year in which the accident occurred, the plaintiff had driven past this intersection at least once each week. Since she had passed the intersection at least 300 times before the accident, it can be inferred that as a reasonable and prudent driver she knew or ought to have known of the practices of the overwhelming majority of drivers in making the left turns contemplated by both the plaintiff and defendant. Cherry v. Hill, 283 Ala. 74, 214 So.2d 427 (1968). Although the observations presented to the jury by defendant's witnesses (and verified by plaintiff's expert witness) occurred subsequent to the accident in point of time, in our opinion the only reasonable inference is that these same practices existed at the time of and prior to the accident. There is absolutely no evidence of any change of circumstances which would justify any other inference.

■ Plaintiff questions the admissibility of the observations made by the defendant's witness John Yurochko because this witness was not listed as a witness in answer to plaintiff's interrogatories nor on defendant's pretrial statement. This witness's identity was not made known to plaintiff until five days before the trial. Rule XVI(c) Uniform Rules of Practice of the Superior Court of Arizona, 17 A.R.S., prohibits the use of unlisted witnesses (other than impeachment witnesses) "except for good cause shown". Here, assuming the applicability of Rule XVI(c)[2] good

cause was shown and we find no abuse of the trial court's discretion in allowing this witness to testify. Although not previously mentioned in this opinion, the City of Phoenix was also initially a defendant, but settled with plaintiff on the day of trial. Yurochko was a City of Phoenix employee, and his existence was not made known to the defendants involved in this appeal until five days before the trial—in other words, plaintiff received knowledge of his existence and potential testimony at the same time that these defendants received such knowledge. The witness Yurochko did not present testimony which could be considered to be in the nature of a surprise to plaintiff, since plaintiff's own expert witness had made similar observations and had arrived at the same result insofar as concerns the practice of other drivers at the intersection involved. Also plaintiff had adequate opportunity to depose Yurochko. *See* Sleizer v. Arizona Title & Trust Co., 9 Ariz.App. 361, 452 P.2d 526 (1969). Under these circumstances we find no error in the admission of witness Yurochko's testimony.

Although plaintiff did not in her listing of questions presented for review (*see* Rule 5(b) 7, Rules of the Supreme Court, 17 A.R.S.) raise any question concerning jury instructions given or refused, she has presented argument in the body of her brief to the effect that the trial court erred in this regard. The trial court's instructions to the jury and any objections which plaintiff might have made thereto have not been included in the transcript filed in this appeal. The abstract of record states:

"In accordance with Rule 5(b) 10 of the Arizona Supreme Court and the Court of Appeals, all of the instructions filed herein are in the record on appeal and are included in this Abstract of Record by this reference. The specific Instructions concerned in this appeal, if

---

2. Defendant points out that no pretrial statement was ever filed in this case, and further that Rule XVI allows the filing of such a statement as late as *two* days

before trial, well after plaintiff was advised of the identity of the witness Yurochko, five days before the trial.

any, will appear *in haec verba* in the Appendix to Appellants' Opening Brief."

Notwithstanding the foregoing, the questioned instructions have *not* been set forth in an appendix to appellants' brief. Although plaintiff purports to quote the questioned instruction in the body of her opening brief, defendant points out that the questioned instruction given has been incompletely quoted. It further appears that the questioned instruction was modified by the trial court after its submission by defendant. The record does not show the nature of any objections which plaintiff presented to the trial court nor the circumstances which brought about the modifications made by the trial court. Under these circumstances we do not deem it necessary to discuss in any detail plaintiff's contentions concerning jury instructions other than to say that we find no error.

The judgment is affirmed.

EUBANK and JACOBSON, JJ., concur.