736 P.2d 13

**CONTEMPO CONSTRUCTION COMPANY, a corporation, Plaintiff/Appellant,**

v.

**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a corporation; Arizona Public Service Company, a corporation, Defendants/Appellees.**

No. 2 CA–CV 5948.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 26, 1987.

Motion for Reconsideration Denied April 7, 1987.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Paul Miltonberger and John H. Westover, Phoe-nix, for plaintiff/appellant.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by John G. Ryan, Phoenix, for defendant/appellee Mountain States Tel. & Tel. Co.

Snell & Wilmer by Donald D. Colburn, James P. Muehlberger and John G. Ryan, Phoenix, for defendant/appellee Arizona Public Service.

HATHAWAY, Chief Judge.

Appellant, Contempo Construction Company (Contempo), brought a contract and tort action against appellees, Mountain States Telephone and Telegraph Company (Mt. Bell) and Arizona Public Service (APS), seeking damages for appellees' fail- ure to move certain utility poles and other equipment. The summary judgments that appellees were granted in their favor are the subject of this appeal. We affirm.

The undisputed facts are as follows. On November 8, 1982, following its successful bid, appellant entered into a contract with the City of Phoenix to improve and repair 19th Avenue. Appellant was required to complete all work within 210 days after the city issued a Notice to Proceed.

The contract also provided that:

If any delay is caused by any act or omission on the part of the Contracting Agency [City of Phoenix] or by any other Contractor working for the Contracting Agency, or if due to no fault or neglect of the Contractor, the Contractor will be granted an extension of time for the com-pletion of the work sufficient to allow for the delay. The allowable extension of time due to such delays shall be deter-mined by the Engineer, provided the Con-tractor has given the Engineer immedi-ate notice in writing of the cause of such delay.

At a December 8, 1982, pre-construction conference attended by Contempo's Joel Smith, a City of Phoenix representative, Mr. Sing, questioned appellees as to when they might complete their work in the 19th Avenue area:

MR. SING: ... Now we'll start with the utility companies and see what comments they have, and problems. Mountain Bell.

\*     \*     \*     \*     \*     \*

What's your situation currently?

MT. BELL: We'll be done down there by next Friday—completely out with that conduit running there.

A VOICE: What about the overhead? Do you have any overhead that are going to be involved down there?

MT. BELL: I don't believe there are any aerials down there that's going to be involved (inaudible).

MT. BELL: We do have some pipes (inaudible).

MT. BELL: That condo (phonetic) running we did put down there. There's some sidewalk and other things.

\* \* \* \* \* \*

MR. SING: All right. Okay. Al.

MR. FIELD: I'm Al Field with APS.

\* \* \* \* \* \*

[W]e have some poles in the area down there, where we're still not out of the way. We are working on the project now. It probably will be 60 days, probably, before we're out.

MR. SMITH: Sixty?

MR. FIELD: Probably; yeah. We have got quite a bit of work to do and we're in the process of coordinating our work with Salt River Project, as well as the cable company, especially on the crossing of the freeway. We've got some special poles ordered for that crossing and they're not in yet, so that will probably be done at the tail-end of the project. Do you know which end you are going to start at, north or south?

\* \* \* \* \* \*

MR. SMITH: South side.

MR. SMITH: But we were talking about that today and I think that if you can do it within the 60–day parameter, we should be able to work around that pretty well.

MR. FIELD: We're going to do our best, but—we're going to shoot for that. Let's put it that way—

MR. SMITH: We will have some difficulty, you know,—

After the conference, appellant agreed to a December 20, 1982, Notice to Proceed. The completion date thereby became July 18, 1983. APS finished its required work by March 20, 1983. Mt. Bell finished by March 24, 1983. On June 3, 1983, appellant was declared in default and another contractor was hired to finish the job.

Appellant filed suit against several defendants, including appellees. The complaint alleged that appellees entered into an agreement that they would move their equipment at the 19th Avenue right-of-way in a reasonable manner in order to not delay appellant's contract with the City of Phoenix. Appellant claimed that Mt. Bell agreed to be out by December 17, 1982, and that APS agreed to finish its work within 60 days of the conference. The complaint alleged that appellees breached their agreements and acted negligently so as to cause delays and injure appellant. Appellant claims that the court erred in entering summary judgment in appellees' favor because: (1) the representations appellees made at the pre-construction conference gave rise to an oral contract; (2) a promissory estoppel issue is present and (3) whether the appellees breached their duty not to injure appellant is an unresolved question of fact.

## THE CONTRACT CLAIM

It is well settled in Arizona that:

For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained. *Savoca Masonry Co., Inc. v. Homes and Son Construction Company, Inc.,* 112 Ariz. 392, 542 P.2d 817 (1975). An offer is "... a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (2d) of Contracts, § 24. The offer creates a power of acceptance permitting the offeree, by accepting the offer to transform the offer as promised into a contractual obligation. Calamari and Perillo, "Contracts" § 15.

\* \* \* \* \* \*

An acceptance is "... a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restatement (2d) of Contracts, § 50.

*K–Line Builders, Inc. v. First Federal Savings and Loan Association,* 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (App.1983).

■ Appellant relies solely upon the pre-construction conference to support its claim that a contract was entered into. However, appellant made no statements that could be construed as either an offer or an

acceptance. Most of the questioning was done by Mr. Sing, the City of Phoenix representative. Even his statements did not request a promise or performance in return. The conference is better characterized as an information-gathering session, than as negotiations to enter into a contract. Therefore, as a matter of law, there was no contract, and the trial court's summary judgment on this issue was appropriate.

Appellant's allegations that because APS and Mt. Bell were obligated by law to move their poles and other facilities, a contract somehow arose when they agreed as to when they would complete their legal duty, is unpersuasive. Any such legal duty would run between appellees and the City of Phoenix (see discussion infra), not appellant. Appellant's further contention that custom and usage in the industry support an oral contract is equally unpersuasive. Custom and usage cannot be used to prove acceptance. *Corbin-Dykes Electric Company v. Burr*, 18 Ariz.App. 101, 500 P.2d 632 (1972).

### PROMISSORY ESTOPPEL

Appellant next claims that a promissory estoppel issue is present and is not a proper issue for summary judgment. Appellant contends that its failure to plead promissory estoppel, is not fatal because if the facts pleaded show estoppel, that is sufficient to raise the issue, citing *Munger v. Boardman*, 53 Ariz. 271, 88 P.2d 536 (1939).

The general rule is that estoppel must be specifically pleaded or else it is waived. *Tiffany Incorporated v. W.M.K. Transit Mix, Inc.*, 16 Ariz.App. 415, 493 P.2d 1220 (1972). In voicing an exception to this general rule, the *Munger* court stated that: "If there ever was a plainer case of estoppel, it is difficult to imagine it, and such estoppel appears from the admitted facts pleaded." 53 Ariz. at 277, 88 P.2d at 538. In *Schade v. Diethrich*, (1 CA–CIV 8478, filed 1/15/87), Division One of this court allowed a party to raise promissory estoppel despite the fact that the theory was not specifically pled. The court cited *Munger* and noted that the trial judge had specified that promissory estoppel was adequately raised in the pleadings.

The elements of promissory estoppel are a promise, which the promissor should reasonably foresee would cause the promisee to rely, upon which the promisee actually relies to his detriment. *Tiffany, Inc. v. W.M.K. Transit Mix, Inc.*, supra. In its complaint, appellant did generally allege that appellees made representations. However, nowhere in that complaint are facts alleged which amount to detrimental reliance. Therefore, unlike *Munger* and *Schade*, the pleadings here are not sufficient to raise the issue. The exception does not apply. On appeal from a summary judgment, parties are not allowed to advance new theories or raise new issues in order to secure a reversal. *Fendler v. Phoenix Newspapers, Inc.*, 130 Ariz. 475, 636 P.2d 1257 (App.1981); *Crook v. Anderson*, 115 Ariz. 402, 565 P.2d 908 (App.1977).

### THE NEGLIGENCE CLAIM

Summary judgment is usually not appropriate in negligence actions. *Tribe v. Shell Oil Company, Inc.*, 133 Ariz. 517, 652 P.2d 1040 (1982). However, we will affirm if the record shows no disputed material fact issues and the moving party is entitled to prevail as a matter of law. *Spelbring v. Pinal County*, 135 Ariz. 493, 662 P.2d 458 (App.1983). To maintain a negligence action, the plaintiff must prove that the defendant had a duty or obligation to follow a certain standard of conduct in order to protect another against unreasonable risk. *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983). Whether or not the appellees here owed the appellant any such duty is a question of law, appropriate for summary judgment. *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 706 P.2d 364 (1985).

The question of duty focuses on the relationship between the parties involved. *Coburn v. City of Tucson*, 143 Ariz. 50, 691 P.2d 1078 (1984). Appellant claims that APS and Mt. Bell were under a

duty to act in a reasonable manner so as not to injure it. As sources of the necessary duty or obligation, appellant points to: (1) an independent legal duty to move all utility equipment; (2) a duty to act carefully if it chooses to act at all; (3) custom and practice in the construction industry; and (4) the risk and foreseeability of damage to appellant.

Appellant first contends that Mt. Bell and APS had a legal duty to move their equipment at their own expense, citing numerous cases. See, e.g., *New Orleans Gaslight Company v. Drainage Commission of New Orleans*, 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831 (1905); *National City v. California Water & Telephone Co.*, 204 Cal.App.2d 540, 22 Cal. Rptr. 560 (1962); *Port of New York Authority v. Hackensack Water Company*, 41 N.J. 90, 195 A.2d 1 (1963). These cases, and the others cited, involved disputes between a governmental entity and a utility company over which party would bear the costs of relocating the utilities facilities. All the cases recognized that the utilities had a legal duty to move their own equipment and should bear their own costs. However, nothing in these cases suggests that this duty extends to a contractor hired by the city. Appellant has cited us no authority for this proposition, and we see no basis for imposing such a duty.

Appellant also contends that appellees had a duty to act carefully once they chose to act at all, citing *Barnum v. Rural Fire Protection Company*, 24 Ariz.App. 233, 537 P.2d 618 (1975). This "duty" is commonly referred to as the "good samaritan rule." The doctrine is inapplicable here, *Roberson v. United States*, 382 F.2d 714 (9th Cir.1967)(physical harm required).

Appellant offers no legal authority to support its allegation that custom and practice in the construction industry can place a legal duty upon every utility and subcontractor to do their required work promptly. We also can find no authority for this proposition. The negligence cases that discuss custom and practice do so in the context of assessing a party's conduct rather than in determining whether a duty

was owed. See *American Smelting & Refining Co. v. Wusich*, 92 Ariz. 159, 375 P.2d 364 (1962); *Johnson v. Garnand*, 18 Ariz.App. 191, 501 P.2d 32 (1972).

Finally, appellant contends that negligence law imposes a duty upon appellees to act towards appellant in a reasonable and prudent manner in light of the apparent risk, relying upon risk and foreseeability of damage to support the necessary duty. In *Markowitz, v. Arizona Parks Board*, supra, the supreme court stated:

> The question [of duty] is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff. If the answer is no, the defendant is not liable *even though he may have acted negligently in light of the foreseeable risks.* (Emphasis added)

146 Ariz. at 356, 706 P.2d at 368.

General allegations of risk and foreseeability will not suffice here.

Questions of duty are not always easily resolvable. Our courts have not been able to posit one good formula, preferring to confront individual cases as presented. *Donnelly Construction Company v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (1984). "No better general statement can be made than that the court will find a duty where, in general, reasonable persons would recognize it and agree that it exists." W. Prosser and W. Keeton, The Law of Torts, § 53 at 359 (5th ed. 1984). The determination involves multiple policy considerations. *Rodriguez v. Besser Company*, 115 Ariz. 454, 565 P.2d 1315 (App.1977). Here, we note that Contempo had other remedies available. It could have taken advantage of the contract clause allowing it extensions of time for delays not caused by its own fault. We are not inclined to hold that utilities owe a legal duty to all contractors working on construction projects that somehow involved work the utility companies must perform.

Similarly, while the utilities here may have owed a duty to the City of Phoenix,

there is no relationship between appellant and appellees that gives rise to a legal duty. The record demonstrates that appellant did not meet its burden of producing evidence of a relationship, placing a duty on appellees, to justify a trial. *Pendleton v. Cilley*, 118 Ariz. 84, 574 P.2d 1303 (1978). Given the pleadings, supporting evidence and affidavits presented to the trial court, summary judgment on the negligence claim was appropriate.

We find that the trial court properly awarded appellees summary judgment on both the contract and negligence claims. Affirmed.

Appellant's request for attorney's fees pursuant to A.R.S. § 12–341.01 is hereby denied. Appellees are awarded their attorney's fees. Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S.

HOWARD, P.J., and FERNANDEZ, J., concur.